### SCHOENFELD v. CITY OF SEATTLE.

(District Court, W. D. Washington, N. D. June 9, 1920.)

No. 194.

1. **Injunction ☞114(1)—Intervention to enjoin ordinance by one without special right will be denied.**

   A petition to intervene in a suit to enjoin the enforcement of an ordinance regulating jitney busses, by a resident who lived on the bus line, and who alleged he purchased his property on the faith that the busses would continue to operate and that the street cars gave inadequate service, does not disclose any vested interest or right not shared by the general public, and permission to file the petition will be withheld.

2. **Municipal corporations ☞106(3)—Rules of procedure are directory, and may be suspended by council.**

   The rules of procedure for the passage of municipal ordinances are directory, and can be suspended by the council acting as a legislative body.

3. **Injunction ☞85(1)—Petitions by citizens against ordinance cannot be considered by courts.**

   A petition filed by many citizens, protesting against an ordinance regulating jitney busses, cannot be considered by the courts in a suit to enjoin the enforcement of the ordinance, since the court cannot review the legislative acts of the council within its constitutional limitations, nor inquire into its motives.

4. **Courts ☞366(8)—Decision of state Supreme Court construing municipal ordinance is controlling.**

   Decisions of the state Supreme Court construing municipal ordinances are binding on the United States District Court.

5. **Municipal corporations ☞661(1)—City of Seattle has control of its streets, and can legislate as to use in reasonable manner.**

   Under Const. Wash. art. 11, § 11, Rem. & Bal. Code Wash. § 7507, subd. 7, and Seattle City Charter, art. 4, § 18, subd. 7, the city has control of its streets, and can legislate with relation to their use in a reasonable manner.

6. **Municipal corporations ☞661(1)—Operation of jitney busses on streets can be denied or restricted.**

   The right to use the public streets of a city for the operation of jitney busses thereon as a private business is a matter of privilege, not of right,

---

and can be prohibited by the city, or permitted under such terms, including the regulation of fares, as the city may prescribe.

**7. Municipal corporations** ⊜⟫**661(1)—Municipal ownership of street railroads does not prevent regulation of jitney busses.**

The fact that the city owns the street railroad system does not deprive it of its power in its legislative capacity to regulate the operation of jitney busses, which compete with the city street railroads.

**8. Municipal corporations** ⊜⟫**661(2)—Ordinance regulating jitney busses held not to give arbitrary power to superintendent of public utilities.**

An ordinance regulating the operation of jitney busses on city streets, which required the superintendent of public utilities to investigate applications for permits to operate such busses, and to report all facts, with his recommendations, to the council, which had final power to determine the application, is not invalid, as giving arbitrary powers to the superintendent.

**9. Municipal corporations** ⊜⟫**661(1)—Ordinances within police powers presumed valid.**

An ordinance regulating the operation of jitney busses on city streets is within the police power of the city, and is presumed to be valid, unless no state of facts could exist which would warrant its passage.

In Equity. Suit by Alvin M. Schoenfeld against the City of Seattle, in which a petition in intervention was tendered by Edward W. Bundy. Permission to file petition in intervention withheld, interlocutory injunction denied, and motion to dismiss plaintiff's bill granted.

W. R. Crawford and Morris B. Sachs, both of Seattle, Wash., for plaintiff.

Walter F. Meier, George A. Meagher, Nelson T. Hartson, and Charles T. Donworth, all of Seattle, Wash., for defendant.

Thomas N. Swale, of Seattle, Wash., for intervener.

Before GILBERT, Circuit Judge, and CUSHMAN and NETERER, District Judges, under section 266, Judicial Code, as amended (Comp. St. § 1243).

NETERER. District Judge. On May 10, 1920, the city of Seattle passed "an ordinance relating to, and regulating the operation of certain kinds of 'for hire' motor vehicles, and prescribing penalties for the violation thereof, and declaring an emergency." The provisions of the ordinance so far as material require that persons desiring to operate a "jitney bus" shall apply to the city council by filing with the city comptroller, on a form provided, an application for a "jitney bus" permit, in which application the route shall be set out, including the specifications of fixed termini, and a schedule of time upon which the same will be operated, and the rate of fare to be charged, and the capacity of the "jitney bus" to be used; that upon the filing of such application the superintendent of public utilities shall without delay investigate the same and make a report thereon in writing to the city council, recommending either the granting of the permit applied for, with or without modifications of the route, termini, schedule, rate of fare, or capacity specified, or refusal of the same, setting forth freely the reasons for the recommendations. The council, upon receipt of the report, may direct the issuance of the permit in accordance with

the recommendations of the superintendent of public utilities, or with such modifications as the council may specify. There is a provision as to what the permit shall contain and that the operation of the "bus" must be in accordance with the permit granted; also a provision for the rigid inspection of each motor vehicle used as a "jitney bus," and a penalty for the operation of a "bus" in an unsafe condition after notice in writing of its impairment, and fixing a penalty for failure to comply with the requirements of the ordinances of the city and laws of the state relating to "for hire" vehicles, and provides that it shall be unlawful to charge, collect, or receive an excess of 10 cents each for one continuous trip in one direction within the city limits.

The plaintiff has filed a petition in equity, praying injunctive relief against the enforcement of the ordinance by the defendant upon the ground that it is violative of the Fourteenth Amendment of the Constitution of the United States, in that it denies to the plaintiff the equal protection of the law, "disturbs his rights," and deprives him of his property without due process of law. He alleges that since December, 1914, divers persons engaged in the business of transporting passengers for hire in and on the streets of said city in automobiles then and now called "jitney busses"; that the operators laid out regular routes and operated "busses" thereon; that in the spring of 1915 a majority of such operators joined to furnish the public service on the lines and routes as adopted; that the plaintiff joined such association in 1917, and has since been continuously operating "jitney busses" in connection with such other persons; that he is now and has been for more than two years last past the owner and operator of three "jitney busses," which "busses" were built for this character of service, and are "worth more than five thousand ($5,000) dollars for such service, but would not be of much value for any other use"; that the lines or routes established were at a large cost and expense; that the traveling public is acquainted with the routes, and relies on the operation of "jitney busses" over the same; that "houses and business buildings have been built and the values of property fixed by reason of such operation and routes"; that the plaintiff derives a net income from the operation of the three "jitney busses" of more than $3,000 a year; that all of said lines or routes so operated on are for the most part on and along streets on which are operated electric street cars; that on all such lines or routes it is necessary to have a large number of "jitney busses" in operation, in order for any one to make any profit from such operation, and if for any reason the number should be cut down from each line or route, it would be impossible for him to make a profit, and he would be compelled to cease operation, which would not only destroy this plaintiff's income, but would seriously inconvenience many thousands of residents of said city, who are to a large extent dependent upon said "jitney busses" to go to and from their homes; that this plaintiff and his associates, operating on such lines or routes, are now and have been for many years last past operating more than 200 "jitney busses," transporting daily many thousands of persons; that the value of such "jitney busses" as

operated is over $300,000, and, if the operators are compelled to cease such operation, on such established routes, the value of such property would not exceed $150,000; that on the 1st day of April, 1919, the defendant acquired the street railway lines in defendant city, and took over the ownership and operation of same, and is the owner and operator of said street railway system; that on the 29th day of March, 1920, the mayor of defendant city, in a written communication to the defendant city council, accompanying a report filed with the mayor by the superintendent of the street railway of the defendant city, requested the immediate passing of an ordinance "placing stringent regulations on jitney busses"; that the municipal railway system is losing money in its daily operation, and the plaintiff alleges that the sole and real purpose sought in the regulation of such "busses" is the elimination of "jitney busses" operated as competitors of the municipal railway system; and then alleges that in the consideration of the ordinance irregularity with relation to reference to a committee and the passage, and likewise the inability on the part of the plaintiff or his counsel to obtain information with relation to the provisions of the ordinance, and its final passage without an invitation to the public to discuss it, are sufficient reasons to render void the ordinance. It is further stated that the superintendent of public utilities has declared:

"That he would refuse to recommend the granting of any permits on routes now occupied by cars of the defendant city, and has announced in public that 'jitney busses' should be absolutely eliminated;" that the said ordinance was not passed as a "police measure," but to produce revenue to the defendant city as owner and operator of said municipal railway system; and further states that he and other operators of said "jitney busses" are now and have been for many years "charging and collecting 25 cents as fare one way on said lines and routes in defendant city, and after certain hours at night on all said lines or routes in said city, * * * and limiting the fare one way to 10 cents * * * deprives this plaintiff of his property without due process of law. * * *"

A petition in intervention is tendered by Edward W. Bundy, in which he says:

"That for two years last past he has been the owner of property along a 'jitney bus' route and resides upon said property with his family; that his property is situated about two blocks from an outward terminus of a 'jitney bus' line operated from a business center in Seattle, which line affords the petitioner quick, convenient, and economical transportation to and from the business district of Seattle, and that he purchased his property and took up his residence on the said property in the belief that said 'jitney busses' would continue to operate; that the Ravenna Street car line operated by the defendant, is about one-half mile distant from the home of the petitioner; that the cars on said line during the 'peak hours' are packed with passengers: that the aisles, platforms, and all standing room are filled to their fullest capacity; that during the greater part of the year the windows of said cars are kept closed, so that the same are hot, close, and foul-smelling, and are unsanitary, unwholesome, and unsafe; that the time consumed in riding upon the street cars is much greater than on the 'jitney busses,' and that he would lose approximately an hour each day, to his irreparable loss; that by the use of the 'jitney busses' he and his family frequently visit different parts of the city for the purpose of attending places of amusement and social intercourse among their friends and that such 'jitney busses' afforded the petitioner and his family an opportunity for amusement, education, and social development;

that in the immediate neighborhood of petitioner are a large number of families similarly situated."

He prays permission to intervene, and that the defendant be restrained from enforcing the provisions of said ordinance.

[1] The defendant moves the dismissal of the plaintiff's bill and objects to the filing of petition in intervention. A number of affidavits are filed on both sides. The petition in intervention does not disclose any vested interest or right in the litigation. Any interest is that shared by the general public. Permission to file is therefore withheld.

[2] The question for decision is: Are any of the constitutional rights of the plaintiff violated by the ordinance? The contention that the ordinance is invalid because, in its presentation and adoption, the rules of procedure with relation to the passage of ordinances were not followed, we think is disposed of by the statement that the rules of procedure are directory, and the council has the power to suspend the rules for reasons deemed sufficient to the members of the council acting as a legislative body. It is disclosed that the action of the council was unanimous, except one member, who was absent from the city.

[3] At bar much emphasis is placed upon a statement that in a short time many persons signed a petition to the city council, protesting the enforcement of the ordinance, as an indication of public sentiment and unreasonableness of the provisions of the ordinance. It is sufficient to say these petitions are properly addressed to the city council, but may not receive consideration by the court whose function is judicial. The court may not infringe upon the legislative functions of the city, or sit in review of the acts of the legislative department of the city in the exercise of its governmental functions within constitutional limitations; nor may the court inquire into the motives of a municipal legislative body in the enactment of an ordinance. State ex rel. Case v. Howell, 85 Wash. 294, 147 Pac. 1159, Ann. Cas. 1916A, 1231; Allen v. Bellingham, 95 Wash. 12, 163 Pac. 18; Soon Hing v. Crowley, 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145.

[4, 5] The labors of this court upon the issue before it are simplified by the decision of the Supreme Court of Washington, whose decisions in construing a municipal ordinance are binding on this court. That the exclusive control of the streets of the city vest in the defendant is provided by section 11, art. 11, of the state Constitution, R. & B. Code & Stat. of Wash. § 7507, subd. 7, and article 4, § 18, subd. 7, Charter City of Seattle, and has been judicially declared by the state Supreme Court. Allen v. Bellingham, 95 Wash. 12, 163 Pac. 18; State ex rel. Schafer v. Spokane, 186 Pac. 864; Cummins v. Jones, 79 Or. 276, 155 Pac. 171; West v. Asbury Park, 89 N. J. Law, 402, 99 Atl. 190; Ex parte Dickey, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F, 840; Greene v. San Antonio (Tex. Civ. App.) 178 S. W. 6, 7. It is conceded at bar by complainant that the city has control of its streets, and can legislate with relation to their use in a reasonable manner.

[6] The identical issue here (in a practical sense) was before the state Supreme Court in Allen v. Bellingham, supra, and it was there

held that an ordinance requiring "jitney busses" to operate under a fixed schedule, over designated routes, regulating the places for stopping, the number of passengers carried, lights, inspection, and other matters, cannot be said to be inherently oppressive but it is within the power of the city in promoting the comfort and safety of the passengers, and that such ordinance is not invalid and unconstitutional because it provides penalties for the violation of its provisions, or because others in the same status may do lawfully what is prohibited to the "jitney bus" owner. The same court in Hadfield v. Lundin, 98 Wash. 657, at page 660, 168 Pac. 516, at page 517 (L. R. A. 1918B, 909, Ann. Cas. 1918C, 942), said:

"The streets and highways belong to the public. They are built and maintained at public expense, for the use of the general public in the ordinary and customary manner. The state, and the city as an arm of the state, has absolute control of the streets in the interest of the public. No private individual or corporation has a right to the use of the streets in the prosecution of the business of a common carrier for private gain without the consent of the state, nor except upon * * * conditions prescribed by the state or municipality. * * * The use of the streets as a place of business, or as the main instrumentality of business, is accorded as a mere privilege; and not as a matter of natural right."

No right was acquired by the plaintiff by reason of the establishment of routes, termini, and the operation of "jitney busses" over such routes; nor did any privilege accrue by reason of the fact that he invested money in "jitney busses," nor is there force in the contention of the plaintiff that the issuance of a vehicle license for permission to operate a "vehicle for hire" confers upon the plaintiff the right to operate such "jitney bus" in violation of the ordinances of the city. A license is not property, nor is it a franchise. P. S. C. v. Booth, 170 App. Div. 590, 156 N. Y. Supp. 140; Burgess v. Brockton (Mass.) 126 N. E. 456; City of Dallas v. Gill (Tex. Civ. App.) 199 S. W. 1144. The Supreme Court of Washington, in State ex rel. Schafer v. Spokane, 186 Pac. 864, in passing on an ordinance regulating the operation of "jitney busses" in Spokane, said by the court to be not dissimilar to the ordinance in Allen v. Bellingham, supra, said:

"But the use to which the appellant purposes putting the streets is not their ordinary and customary use, but a special one. He purposes using them for the transportation of passengers for hire, a use for which they are not primarily constructed. As to such users we think the power of the municipality is plenary, in so far as this particular clause of the statute is concerned. It denies no form of regulation pertaining to business of this character, even to the prohibition of the business entirely."

The plaintiff purposes to utilize the public streets of the city for a special purpose and private gain, a right not common to all. As to such the Washington court in Allen v. Bellingham, supra, said, "The power of the city as to such users of the streets is entirely plenary," and quoted with approval from Ex parte Dickie, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F, 840, "The power or right to use the street may be wholly denied."

[7] There is no merit in the contention that the city, being the owner of the street car system in the city, acts in relation to this is-

sue in its proprietary or business relation, and that in such relation it has a status as an individual or private corporation, and may not for the purpose of advancing its proprietary or business interest legislate with relation to the use of the street by the plaintiff, where the result of such legislation would affect beneficially its proprietary interest. The proprietary relation of the city does not take from it the power to exercise in its governmental function to say whether the operation of 200 "jitney busses" upon the streets occupied by street car lines should be regulated with relation to the common use of such streets by the public. What has been said disposes of the further contention that the city is powerless to legislate with relation to the fares. The Washington Supreme Court, in State ex rel. Schafer v. Spokane, supra, said:

"That the common carrier for private gain may not use the streets without the consent of the city, only except on conditions described by the state or municipality."

State v. Crawford, 74 Wash. 248, 133 Pac. 590, 46 L. R. A. (N. S.) 1039, has no application. In that case the Legislature attempted arbitrarily to fix the fare of a railroad operating under a private franchise over which the state had no jurisdiction. In the instant case the control of the street is in the city, and its power is plenary and may fix the conditions.

[8] Nor is the contention that arbitrary powers are given to the superintendent of public utilities with relation to granting or refusal of permits sustained. The superintendent of public utilities is required by the ordinance to report to the council all facts with his recommendations thus giving the council the benefit of his expert knowledge, but the final disposition rests with the supreme legislative body of the city.

[9] The control of the streets in the city is exclusive; its power is plenary. The plaintiff has no vested right to the use of the streets for the carrying on of a private business as a common carrier, and the city has the power to regulate the operation of "jitney busses" over the streets. The ordinance is within the police power of the city and is presumed to be valid, unless no state of facts could exist to warrant its passage. State v. Pitney, 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A, 209, affirmed 240 U. S. 387, 36 Sup. Ct. 385, 60 L. Ed. 703; Nolen v. Riechman (D. C.) 225 Fed. 812; Ex parte Sullivan, 77 Tex. Cr. R. 72, 178 S. W. 537; Rast v. Van Deman, 240 U. S. 342, 36 Sup. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; Desser v. Wichita, 96 Kan. 820, 153 Pac. 1194, L. R. A. 1916D, 246.

From what has been stated, it sufficiently appears that the ordinance is not unreasonable, discriminating, and arbitrary. Nothing that was said by the Supreme Court in Curtin v. Benson, 222 U. S. 78, 87, 32 Sup. Ct. 31, 56 L. Ed. 102, has any application to this issue, nor has Omaha Water Co. v. Omaha, 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614. All of the cases cited by plaintiff are bottomed on vested rights or on different states of facts.

Interlocutory injunction is denied, and motion to dismiss is granted.