[No. 19992. Department One. December 6, 1926.]

INTERNATIONAL MOTOR TRANSIT COMPANY et al., Respondents, v. CITY OF SEATTLE et al., Appellants.[1]

[1] MUNICIPAL CORPORATION (354)—AUTO STAGES—REGULATION BY MUNICIPALITY. An ordinance requiring a city driver's license for drivers of vehicles carrying passengers for hire, when applied wholly within the city, is not in conflict with the state motor vehicle laws.

[2] COMMERCE (1)—MUNICIPAL CORPORATIONS (354)—REGULATION OF INTERSTATE COMMERCE—INTERSTATE AUTO STAGES. A city has no power to require a city driver's license from the driver of an auto bus engaged solely in interstate commerce through the transportation of passengers from one state to another.

Appeal from a judgment of the superior court for King county, Jones, J., entered January 12, 1926, in

[1] Reported in 251 Pac. 120.

favor of the plaintiffs, in an action to enjoin the enforcement of a municipal ordinance regulating the operation of auto stages, tried to the court. Affirmed.

*Thomas J. L. Kennedy* and *Ray Dumett,* for appellants.

*Guy E. Kelly* and *Thomas MacMahon,* for respondents.

Holcomb, J.—Respondent sued to enjoin the city of Seattle and its officers from enforcing the provisions of sections 103 to 114 inclusive, of the Seattle license code, Ordinance No. 48,022.

A demurrer to the complaint interposed by appellants was overruled, whereupon appellants elected to stand upon their demurrer, and refused to plead further. The trial court thereupon entered judgment permanently enjoining appellants from enforcing, or attempting to enforce, the provisions of sections 103 to 114 of the ordinance, as against respondents, so long and in so far as respondents are engaged exclusively in carrying passengers for hire by means of motor busses or auto stages between the city of Seattle and points outside the corporate limits of the city.

Appellants contend that the ordinance is not in conflict with any general laws on the subject, and that its enforcement does not constitute any unlawful interference with interstate commerce.

Respondent, International Motor Transit Company, is a Washington corporation, engaged in the business of carrying pasengers for hire by means of auto stages between Seattle, Washington, and Portland, Oregon, and respondent Hartman is a driver of one of its auto stages. He has not obtained a "for hire" driver's license, as required by section 103 of the Seattle license code.

Under the allegations of the complaint, the state had issued a license to respondent Hartman, authorizing him to drive on all highways of the state. The complaint also alleged that respondents are not carrying passengers for hire within the state of Washington, but only between Seattle in this state, and Portland in Oregon.

The sections of the ordinance involved are as follows:

"Section 103. It shall be unlawful for any person to drive an automobile or other motor vehicle carrying passengers for hire, within the city of Seattle, without having a valid and subsisting license so to do, to be known as a 'Driver's License' to be obtained from the city comptroller in the manner hereinafter provided.

"Section 104. No person shall be issued a driver's license unless he fulfills the following qualifications:

"(a)   He must be at least twenty-one (21) years of age.

"(b)   He must submit to a medical examination by the commissioner of health and procure from him a certificate showing the applicant free from any infirmity of body or mind which will render him unfit for the safe operation of an automobile, or other motor vehicle, and especially shall such applicant be free from any taint or tendency to epilepsy, vertigo, heart trouble or color blindness.

"(c)   He must be able to read and write the English language.

"(d)   He must not be addicted to the use of intoxicating liquor or drugs.

"(e)   He must be of good moral character.

"(f)   He must fill out upon a blank to be provided for that purpose by the city comptroller, a statement giving his full name, residence address, place of birth, length of time he has resided in the city, citizen or non-citizen, last place of employment, whether he has been previously licensed as a driver and if so, where and whether or not his license has ever been suspended or revoked, and if so, for what cause.

"He shall give the names and mailing addresses of four (4) persons, not relatives, who have known him for at least two (2) years last past. He shall give his height, weight, color of hair and eyes, and such other information as the city comptroller may deem necessary.

"(g)  He must take a practical examination to be given by the superintendent of public utilities (or someone designated by him for that purpose) and procure from him a certificate showing that the applicant is a safe driver of an automobile or other motor vehicle; that he has a good knowledge of the geography of the city and the laws and ordinances relating to the driving and operating of motor vehicles for hire within the city of Seattle.

"The application and statement must be signed and sworn to by the applicant, and the certificate from the commissioner of health and the superintendent of public utilities shall be made part of the application.

"The commissioner of health and superintendent of public utilities having examined an applicant for a driver's license, shall certify to the city comptroller the result of such examination, with their recommendation in relation thereto.  Any person having failed to pass a satisfactory examination may be re-examined after a reasonable period of time, and if such subsequent examination be satisfactory the applicant may be recommended for a driver's license.

"Section 105.  When the application for a driver's license, duly signed and sworn to, has been received by the city comptroller, he shall, within thirty (30) days, investigate the statements contained therein, and may obtain such other information concerning the applicant's character, integrity, personal habits, past conduct, and general qualifications, as will enable the city comptroller to determine whether or not the applicant is a suitable person to drive an automobile or other motor vehicle for hire within the city of Seattle.

"Section 106.  The applicant for a driver's license having passed a satisfactory examination as to his ability to drive a motor vehicle for hire, and having been certified by the commissioner of health that the

applicant is physically and mentally qualified, and having met all other requirements of this ordinance relating to drivers of motor vehicles for hire, may be issued a driver's license of the class recommended by the superintendent of public utilities, which class shall be determined by the applicant's examination.

"Driver's license, 'first class' shall entitle the holder thereof to drive any kind or class of motor vehicles for hire within the city of Seattle.

"Driver's license, 'second class' shall be limited to stages, sight-seeing cars, or other motor vehicles operating over a specified route and having a fixed terminal.

"Driver's license, 'third class' shall be limited to drivers of taxi-cabs, for hire cars, or other automobiles not operating on fixed routes, and having a passenger capacity of less than seven (7) persons, not including the driver.

"Section 107.  Any person holding a driver's license of the second or third class, desiring to obtain a license of a different or higher class, may apply to the superintendent of public utilities for re-examination, and on being duly certified to the city comptroller, such person may be issued a license of another class.

"Section 108.  Each applicant for a driver's license of the classes heretofore specified, and before such license can be issued, must furnish to the city comptroller two (2) recent photographs of himself of a size and kind so that one (1) of these photographs may be easily attached to his license when the same is issued, and an exact duplicate thereof to be filed together with the application, as a permanent record in the office of the city comptroller.  One photograph of the licensee shall be attached to the license in such a manner that it cannot be removed and another photograph substituted without detection.

"Section 109.  When all of the conditions and requirements herein prescribed have been complied with by the applicant, he shall be furnished with a driver's license, and at the time of the delivery of said license the city comptroller shall furnish the licensee

with a suitable folder containing said license and the photograph and signature of the licensee.

"Each class of driver's license shall be on paper of a different color, and shall have the figures one (1), two (2) or three (3), as the case may be, printed on said license.

"Section 110. All driver's licenses shall expire on January 31st of each year, and it shall be unlawful for any person whose driver's license has expired to drive an automobile or other motor vehicle carrying passengers for hire within the city of Seattle, unless such driver's license has been renewed. Application for renewal shall be made to the city comptroller on blank forms to be provided by that officer, and shall give the applicant's name in full, residence address, business address, and signature. The city comptroller on presentation of the city treasurer's receipt, shall then renew the license for a period of one year; provided, however, that if a driver's license is not renewed within thirty (30) days from the date of expiration the applicant must obtain from the superintendent of public utilities and from the commissioner of health, the certification and other requirements necessary for an original license; provided, however, that no driver's license shall be renewed after ninety (90) days from date of expiration thereof.

"Section 111. For each original license, two and 50/100 ($2.50) dollars; for each renewal thereof one ($1.00) dollar; for re-issuing license and folder, in case of loss, destruction or condemnation, one and 50/100 ($1.50) dollars. No charge shall be made by the commissioner of health for examining applicants for driver's licenses, nor by the department of public utilities for any written or practical examination given drivers.

"Section 112. When the license folder furnished by the city comptroller is worn out, damaged or otherwise unfit for use, the city comptroller may destroy such folder and the licensee shall be required to buy a new folder and furnish two (2) recent photographs of himself.

"When a photograph used with the license becomes

faded, damaged or otherwise useless for proper identification, the city comptroller may require that the licensee furnish two (2) recent photographs of himself; one of them to be put into the license folder, the other one to be filed with the original application. The faded, damaged, or otherwise useless photograph removed from the license folder shall immediately be destroyed.

"Section 113. In addition to other reasons set forth in this ordinance for revocation of licenses, or for the suspension of the same, a driver's license may be suspended for not less than ten (10) days nor more than sixty (60) days by the police judge for violation of any of the provisions of this ordinance relating to drivers of vehicles carrying passengers for hire, or upon conviction in any court under any law or ordinance relating to speeding, reckless driving, drunkenness, possession or sale of intoxicating liquor, use, sale or possession of narcotic drugs, or for violation of any law or ordinance relating to overcharge for carrying for hire, or for fraud or the commission of an act involving moral turpitude.

"Any driver of an automobile for hire, whose driver's license has been suspended in police court, must surrender his license for the period of suspension to the city comptroller.

"Section 114. It shall be unlawful for any licensed driver to fail, neglect or refuse to exhibit his license, on request, to any passenger or to any peace officer."

Appellants contend that power is derived to enact this ordinance from the state constitution, art. XI, § 11, reading:

"Any county, city, town or township, may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

And also Rem. Comp. Stat., § 8966 [P. C. § 678], providing that any city of the first class shall have power to "lay out and establish . . . streets . . . and regulate and control the use thereof."

They also contend that the motor vehicle act, Rem. Comp. Stat., § 6312 *et seq.* [P. C. § 196], and the motor vehicle operator's act, Rem. Comp. Stat., § 6363 *et seq.* [P. C. § 234-14], are not violated by the provisions of this ordinance, and cite our cases of *Allen v. Bellingham,* 95 Wash. 12, 163 Pac. 18; *State ex rel. Schafer v. Spokane,* 109 Wash. 360, 186 Pac. 864; *In re Sound Transit Co.,* 119 Wash. 684, 206 Pac. 931; *Seattle v. Rothweiler,* 101 Wash. 680, 172 Pac. 825; *Schoenfeld v. Seattle,* 265 Fed. 726; *White v. Turner,* 114 Wash. 405, 195 Pac. 240, 197 Pac. 609; *State ex rel. Seattle & Rainier Valley R. Co. v. Superior Court,* 123 Wash. 116, 212 Pac. 259.

[1] We have no doubt that, under our statutes and the cases above cited, the ordinance is not in conflict with the state laws, when applied wholly within the city of Seattle, and that it is manifest that the ordinance was so intended. It is intended to apply to "for hire" vehicles as distinguished from auto stages. "For hire" vehicles, as provided in Rem. Comp. Stat., § 6313, are defined to mean all motor vehicles other than automobile stages used for the transportation of persons for which transportation remuneration of any kind is received, either directly or indirectly.

[2] On the question of interference with interstate commerce, the supreme court of the United States has very definitely decided the matter.

In *Barrett v. New York,* 232 U. S. 14, a suit to restrain the enforcement against the Adams Express Company of ordinances of the city of New York upon the ground that, as applied to that company, the ordinance constituted an interference with interstate commerce, and denied to it the equal protection of the laws. The express company had been engaged in interstate commerce for many years, and transacted business in many states; in the city of New York it

handled daily about 50,000 interstate shipments, employing 341 wagons and 68 automobiles. It also did a small local business in New York City, and, in addition, received packages for transportation between that city and such points within the state of New York as were on the line of the New York, New Haven and Hartford Railway. The interstate business, in the number of packages, comprised 98 per cent of the total business transacted in New York City, and it was impracticable to effect a separation of local and other intrastate shipments being handled in the same vehicles, and in the same manner that was employed in connection with the interstate business. The ordinance provided for a license fee of $5.00 for each vehicle, and fifty cents for each driver. During a strike, the city, through its officers, undertook to enforce the ordinance with respect to all the vehicles and drivers of the company, threatening to arrest unlicensed drivers of unlicensed vehicles notwithstanding they may have been engaged in interstate commerce, and to remove, if necessary, unlicensed vehicles from the streets.

The supreme court held that sections 305 and 306 of the New York ordinance were invalid in so far as they required the express company to obtain local licenses for transacting its interstate business, and that the ordinances could not be upheld under the exercise of the police power. Among other things, the court said:

"The requirements of §§ 305 and 306, with the schedule of fees in § 308, cannot be regarded as imposing a fee, or tax, for the use of the streets; if they were such, the question would at once arise as to the validity of the discrimination involved in such an exaction. Nor can they be considered as a regulation in the interests of safety in street traffic. Other ordinances provide for the 'rules of the road' to which wagons of express companies, as well as those of other persons, are sub-

ject. . . . The right of public control, in requiring such a license, is asserted by virtue of the character of the employment, but while such a requirement may be proper in the case of local or intrastate business, it cannot be justified as a prerequisite to the conduct of business that is interstate. . . .

"It would seem to follow, necessarily, that the annual license fee prescribed by § 308 . . . cannot be exacted, so far as the interstate business is concerned."

The supreme court of the United States, also, in *Buck v. Kuykendall,* 267 U. S. 308, reversed the decision of this court involving chapter 111, Laws of 1921, requiring common carriers for hire, using state highways by auto vehicles between fixed termini over regular routes, to first obtain a certificate of public convenience and necessity.

The court in that case held that the provision of the Washington statute is a regulation, not of the use of its own highways, but of interstate commerce; that its effect upon such commerce is not merely to burden, but to obstruct it; that such state action is forbidden by the commerce clause.

If the state may not so regulate, as was held by the last cited case, certainly the city, an inferior public corporation, having merely delegated powers from the state, cannot do so.

The judgment is affirmed.

Tolman, C. J., Mitchell, Main, and Fullerton, JJ., concur.