KENNETH W. MACKIE, *Respondent,* v. THE CITY OF
SEATTLE, *Appellant.*

*Douglas N. Jewett, City Attorney,* and *J. Roger Nowell, Assistant,* for appellant.

*Madden & Poliak* and *William Madden,* for respondent.

CALLOW, J.—This action challenges the right of the City of Seattle to close a public street to through vehicular travel. The judgment appealed from concerns the closure of South Southern Street.

The plaintiff, Kenneth W. Mackie, owns property and conducts a business at 524 South Southern Street, Seattle, Washington. He purchased the property and erected a building thereon in 1973, involving a total investment of $80,000. He conducts a crating and packaging business on the property, and his customers transport their articles to the plaintiff and collect them from him after they have been crated.

There is no access to the property from the west. Access from the east is along South Southern Street from 7th Avenue South. A line drawn approximately 100 feet east of 7th Avenue South divides a residential zone from an industrial zone. For about 50 years the South Park area east of this line has been zoned and used as a residential area, and the properties lying west of the line are zoned for industrial use. A diagram of the area follows.

In 1974 the residents abutting South Southern Street petitioned for its closure at the approximate dividing point between the residential and industrial zones. They desired closure to improve the livability of their neighborhood, claiming that the development of industry had had a substantial adverse effect upon their community. They asserted that the increase in truck traffic to and from the industrial zone, and the speed, noise and dust generated by such traffic, debased the quality of residential living. All of the owners of homes on South Southern Street signed the petition for closure.

The Board of Public Works directed the street to be closed on July 3, 1974. Closure was accomplished by

installing a guard rail in the center of the street, which preserved vehicle access to all the abutting houses as cars entering the street from either end could drive its full length up to the barrier. Pedestrian traffic was unaffected and the barrier was designed so that emergency vehicles could go through it if necessary. The effect of the closure was to prevent traffic from proceeding from 8th Avenue South, an arterial, westerly to and across 7th Avenue South. Following the closure, customers traveling to the plaintiff's place of business from the south were required to travel on 8th Avenue South several blocks beyond Southern Street to Monroe or Kenyon Street, then turn west to 7th Avenue South, thence south to Southern and then west again to the plaintiff's business. The plaintiff received numerous complaints from customers unable to locate his plant, and due to the difficulty of instructing customers unfamiliar with the area on how to reach the plaintiff's plant, it was often necessary for the plaintiff or his employees to meet the customer at some designated spot and lead the customer to the plaintiff's place of business.

The plaintiff and other property owners in the industrial zone protested the closure, and on July 31, 1974, the Board of Public Works held a public hearing to consider the objections to closure. The board heard the views of both proponents and opponents of closure, as well as those of the Fire Department, the Police Department and other city agencies, and concluded that continued closure was appropriate. In September 1974, at the request of owners of commercial property in the industrial zone, the board again reviewed its decision. The board chose to stand by its original decision.

On March 4, 1975, the plaintiff commenced this action, asking for an injunction and damages against the City of Seattle, and alleging that the City does not have the power to regulate traffic by barricading the street or, alternatively, that if it has the power, the City acted arbitrarily and

capriciously in exercising it. At the conclusion of the plaintiff's case, the City moved to dismiss the claim for monetary damages. The court granted the motion and determined that the sole issue was one of law to be decided by the court. The jury was discharged without objection and the court ruled for the plaintiff, ordering removal of the barricades. The court found that the Board of Public Works discharged its functions reasonably in considering the question of closure, but acted arbitrarily and capriciously in such procedure, and further found that the board's decision was unreasonable and arbitrary. The court concluded that the plaintiff has standing at law to challenge the decision of the Board of Public Works to close the street because the plaintiff is adversely affected by such closure in a manner different from that of the general public. The City appeals.

The issues raised are whether (1) the plaintiff has legal standing to challenge the street closure; (2) the City has the power to close a street; (3) the court could overrule the judgment of the Board of Public Works in determining that the street should be closed; and (4) the Board of Public Works acted arbitrarily and capriciously.

## STANDING

The plaintiff asserts that he has standing to attack the closure of the street by the Board of Public Works. He bases this assertion on the proposition that (1) in closing a public street the "public use" considered is broader and more inclusive than the mere use by abutting property owners, and (2) the right to ingress and egress is a property right and where it is interfered with the landowner is entitled to sue for damages. We disagree.

■ *State v. Wineberg*, 74 Wn.2d 372, 375, 444 P.2d 787 (1968), stated:

(1) a property owner must abut directly upon the portion of the roadway being vacated in order to be awarded compensable damages per se; (2) where the closure and the owner's property are separated by an intersecting street, compensation is usually denied; and (3) where the

closure occurs within the same block but not directly in front of the property, the owner must show physical impairment of his access different in kind from that of the general public (*i.e.*, if the impairment is merely an added inconvenience that is common to all travelers it cannot form the basis for payment of compensation).

Here, the plaintiff's property does not abut the segment of South Southern Street that was closed, and is separated from the closed segment by an intersecting street. In *Yarrow First Associates v. Clyde Hill*, 66 Wn.2d 371, 403 P.2d 49 (1965), the permanent closure of the street in question was disapproved because the closure would have landlocked the property owner. It is undisputed here that the plaintiff was not landlocked by the City's action. Likewise, the recent case of *Keiffer v. King County*, 89 Wn.2d 369, 572 P.2d 408 (1977), is inapplicable since it deals with abutting property, although the principles set forth therein regarding the exercise of the police power in traffic flow regulation are apropos.

*Walker v. State*, 48 Wn.2d 587, 591, 295 P.2d 328 (1956), said:

> Re–routing and diversion of traffic are police power regulations. Circuity of route, resulting from an exercise of the police power, is an incidental result of a lawful act. It is not the taking or damaging of a property right.

We also find *Hoskins v. Kirkland*, 7 Wn. App. 957, 960–61, 503 P.2d 1117 (1972), holding in an analogous situation:

> If, however, the landowner still retains an alternate mode of egress from or ingress to his land, even if less convenient, generally speaking he is not deemed specially damaged.

The plaintiff and his customers still have access. to the property. The fact that access is deflected a few blocks and will be inconvenient due to the closure of South Southern Street in the next block does not raise such inconvenience to the status. of a special injury not suffered by the general public. The plaintiff does not have standing to challenge

the Board of Public Works' action. *Banchero v. City Council*, 2 Wn. App. 519, 524–25, 468 P.2d 724 (1970). *See generally* Annot., 73 A.L.R.2d 689, 701 (1960); 68 A.L.R. 1285, 1293 (1930).

### POWER TO CLOSE A STREET

The property owner states that the City did not have the power to close the street. This assertion is based on the claims that the power to regulate the streets does not include the power to prohibit their use by nonresidents, and the authority relied on by the City for its closure of the street concerned the vacation of a street, direction changes, or condemnation of property in acquisition for limited access highways, *not* street closure.

As recognized in *Peden v. Seattle*, 9 Wn. App. 106, 107–08, 510 P.2d 1169 (1973):

> The legislature within applicable constitutional limitations may regulate traffic over the highways of this state.
> The essential principle to be kept in mind is that the legislature, within constitutional limitations, has absolute control over the highways of the state, both rural and urban.
> *State ex rel. York v. Board of County Comm'rs*, 28 Wn.2d 891, 898, 184 P.2d 577 (1947).

With regard to city streets the legislature has provided:

> RCW 35.22.280 Specific powers enumerated. Any city of the first class shall have power:
>
> . . .
>
> (7) To lay out, establish, open, alter, widen, extend, grade, pave, plank, establish grades, or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks, and other public grounds, and to regulate and control the use thereof, and to vacate the same, and to authorize or prohibit the use of electricity at, in, or upon any of said streets, or for other purposes, and to prescribe the terms and conditions upon which the same may be so used, and to regulate the use thereof;

*See* Seattle City Charter art. 4, § 14, Sixth, and art. 7, § 6, Second. This statute has been interpreted to grant a city both "the exclusive control of [its] streets," and the power

to regulate "their use in a reasonable manner." *Schoenfeld v. Seattle*, 265 F. 726, 730 (W.D. Wash. 1920).

The action by the City of Seattle here in closing South Southern Street to through traffic was within its authority.

### REVIEW OF THE ADMINISTRATIVE DECISION

■ We turn to an inquiry into whether the trial court could overrule the judgment of the Board of Public Works in determining that the street should be closed.

> A decision by an administrative commission is not arbitrary and capricious simply because a trial court and this court conclude, after reading the record, that they would have decided otherwise had they been the administrative commission. Where a tribunal has been established to hold inquiries and make decisions as to whether an employee shall be dismissed, review by the judiciary *is limited* to determining whether an opportunity was given to be heard and whether competent evidence supported the charge. *State ex rel. Schussler v. Matthiesen*, 24 Wn.2d 590, 166 P.2d 839 (1946), and cases cited therein. The crucial question is whether or not there is evidence to support the commission's conclusion. A finding or a conclusion made without evidence to support it, is, of course, arbitrary. *State ex rel. Tidewater–Shaver Barge Lines v. Kuykendall*, 42 Wn.2d 885, 891, 259 P.2d 838 (1953); but it is not arbitrary or capricious if made with due consideration of the evidence presented at the hearing. . . . Neither the trial court nor this court can substitute its judgment for the independent judgment of the [administrative body].

*State ex rel. Perry v. Seattle*, 69 Wn.2d 816, 821, 420 P.2d 704 (1966).

The management of the streets of Seattle was delegated to the Board of Public Works. Seattle City Charter art. 7, § 6, Second. Here, the record shows (1) a public hearing was held by the board, (2) both sides presented testimony, (3) films of the area were reviewed, and (4) the Engineering, Police and Fire Departments and other agencies were consulted. No allegation has been made that the procedure by which the board arrived at its result prejudiced either party. The trial court's examination and weighing of the

evidence after the administrative body designated to make the decision had already done so, therefore, was error.

## Was the Administrative Action
## Arbitrary or Capricious

The property owner asserts the board acted arbitrarily and capriciously. It is claimed that (1) the evidence indicated that traffic was no worse before the barricades were put in place than in most mixed residential–industrial areas; (2) the preponderance of the evidence shows that no unusual noise or dust was present in the area prior to the closure of the street; (3) the wide discretion given planning commissions or zoning boards is not relevant to a Board of Public Works decision to close a street; and (4) if the situation or the density of traffic in this area does at some future date warrant action, less drastic means could be employed such as installing traffic lights, stop signs, or limiting the use of the streets to vehicles under a certain tonnage.

*Hayes v. Yount,* 87 Wn.2d 280, 286, 552 P.2d 1038 (1976), stated:

> [Administrative decisions] are to be affirmed unless the administrative findings, conclusions, or decisions are "clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or . . . arbitrary or capricious." RCW 34.04.130(6)(e), (f); *Department of Ecology v. Ballard Elks Lodge 827,* 84 Wn.2d 551, 555, 527 P.2d 1121 (1974); *Stempel v. Department of Water Resources,* 82 Wn.2d 109, 113–14, 508 P.2d 166 (1973). Agency action is "arbitrary or capricious" if there is no support in the record for the action which is therefore "'*wilful and unreasoning action, in disregard of facts and circumstances.*'" *Northern Pac. Transp. Co. v. State Util. & Transp. Comm'n,* 69 Wn.2d 472, 478, 418 P.2d 735 (1966). Under the more rigorous "clearly erroneous" standard agency action may be reversed where the reviewing court is firmly convinced that a mistake has been committed, even though there is evidence supporting the action. *Ancheta v. Daly,* 77 Wn.2d 255, 260, 461 P.2d 531 (1969). The existence of

such a mistake must be considered by the court in light of the policy contained in the authorizing statute, which is made part of the standard of review by RCW 34.04-.130(6)(e). *Schuffenhauer v. Department of Employment Security,* 86 Wn.2d 233, 235, 543 P.2d 343 (1975). Under neither standard may a court simply substitute its judgment for that of the agency. *Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n,* 83 Wn.2d 446, 449, 518 P.2d 1237 (1974).

■ The record before us includes evidence that development of the industrial zone in recent years had a substantial adverse effect upon the residential community, and the increase in truck traffic to and from the industrial zone, and the speed, noise and dust generated by such traffic, debased the quality of living in the residential neighborhood. A community may restrict the flow of traffic into residential areas in order to reduce noise, traffic hazards and litter. *County Bd. of Arlington County v. Richards,* 434 U.S. 5, 54 L. Ed. 2d 4, 98 S. Ct. 24, 26 (1977).

The judgment of the trial court is reversed.

WILLIAMS and ANDERSEN, JJ., concur.

[No. 4968-1. Division One. March 13, 1978.]