[No. 22066–7–I. Division One. September 18, 1989.]

THE CITY OF SEATTLE, *Appellant,* v. SAMIS LAND CO., *Respondent.*

---

*Douglas N. Jewett, City Attorney, Gordon F. Crandall, Senior Assistant,* and *Sean Sheehan, Assistant,* for appellant.

*Ralph Brindley, Bradley Bagshaw, Deborah Martin,* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for respondent.

COLEMAN, C.J.—The City of Seattle appeals the trial court's final judgment in favor of Samis Land Co. Samis Land Co. is the owner of several properties located in the city of Seattle. Pursuant to Seattle City Ordinance 90047, the City of Seattle, a municipal corporation of the first class, had been charging Samis use and occupation fees for encroachments of Samis's properties on the City's public streets. The City brought the present action against Samis in order to collect unpaid fee assessments for the years 1970 through 1987. The amount unpaid for those years totaled

$33,572.58. After a 1–day bench trial, the trial court ruled in favor of Samis.

The encroachments include chimney bases, concrete steps or stairways, lightwells, sidewalk elevator doors, vent ducts, and areaways. The areaways constitute the most extensive portion of these encroachments. Areaways are spaces existing beneath city streets and/or sidewalks which are adjacent and contiguous with buildings appurtenant to them. The fees charged by the City of Seattle for use and occupation of areaways and other encroachments are assessed on a square footage basis except where it is recognized that areaways are not being used, in which case the City charges a flat fee. The square footage figures are based on approximations of the extreme parameters of the areaways.

The City holds an easement in the public streets at issue in this action. The abutting owner owns in fee the half of the street directly adjacent to his property. By virtue of the City's easement, it has exclusive dominion and control over public street rights of way and may impose fees to regulate the use and occupation of such areas pursuant to RCW 35.22.280(7). However, the court concluded that the City may not charge an abutting street owner a fee for the privilege of using his own property underneath city streets, provided that such use does not interfere with the public's right of way. The trial court reasoned that by charging Samis for areaway use, the City was in effect charging Samis rent for the use of its own property and that, therefore, the City's actions constituted an unlawful taking of property.

Independent of this conclusion the trial court further concluded that because the City failed to introduce reliable evidence as to the existence of the alleged areaways and as to whether the alleged areaways were in fact in use, the City's case failed for lack of proof.

The trial court also concluded that the City may not charge a fee for a de minimis encroachment above the surface of a public street. The court held that the chimney

base located far above street level on one of Samis's properties constituted a de minimis encroachment. This appeal followed.

We disagree with the trial court's judgment that the City may not exact fees pursuant to the ordinance for uses as defined by the ordinance. However, we agree with the trial court that the City's proof with respect to the areaways was inadequate.

The primary issue on appeal is whether appellant has the authority to exact fees for the use of areaways pursuant to ordinance 90047. Appellant contends that it does. We agree.

Appellant contends that the City is authorized to regulate and control street area above and below the surface of a sidewalk. In support of this proposition, appellant relies upon RCW 35.22.280(7), which provides that any city of the first class shall have the power

> [t]o lay out, establish, open, alter, widen, extend, grade, pave, plank, establish grades, or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks, and other public grounds, and to regulate and control the use thereof, and to vacate the same, and to authorize or prohibit the use of electricity at, in, or upon any of said streets, or for other purposes, and to prescribe the terms and conditions upon which the same may be so used, and to regulate the use thereof;

"This statute has been interpreted to grant a city both 'the exclusive control of [its] streets,' and the power to regulate 'their use in a reasonable manner.'" *Mackie v. Seattle,* 19 Wn. App. 464, 470–71, 576 P.2d 414 (1978) (quoting *Schoenfeld v. Seattle,* 265 F. 726, 730 (W.D. Wash. 1920)).

Appellant further relies upon recognized text authority in the field of municipal law which states that the City's power to control streets

> extends to their whole length and breadth, and is not limited to the surface of the street but extends above and below the surface. The municipal authorities have the same power to regulate the use of the streets beneath as upon the surface thereof, and the power is in like manner restricted to public uses.

(Footnotes omitted.) 10 E. McQuillin, *Municipal Corporations* § 30.41, at 695–96 (3d ed. 1981). McQuillin also states that municipal corporations may require permits for street

uses other than ordinary pedestrian travel, including area-ways. 9A E. McQuillin § 26.155–.156, at 4–6. Appellant contends that pursuant to its authority to require permits, it may charge a use and occupation fee for the private use of areaways. We agree.

 In the instant case, it is undisputed that the area-ways are within the City's easement. 10 E. McQuillin, *Municipal Corporations* § 30.85, at 794 (3d ed. 1986) states that it is unquestionable that the Legislature may authorize abutting owners to use the street under the surface and this authority may be delegated to municipalities so as to give them power to authorize the construction of areas in the sidewalks leading to basements, vaults under the sidewalks, areaways, etc. McQuillin, at 795. A municipality may permit areaways where they are properly protected and do not unreasonably interfere with the convenient use of the public way. McQuillin, at 795. Thus, contrary to respondent's argument, there is authority for the proposition that the City has the authority to regulate subsurface areas, including areaways, as well as surface areas. Therefore, the next question is whether some interference with the public's use is necessary before the City can charge a fee. Appellant contends that *Baxter–Wyckoff Co. v. Seattle,* 67 Wn.2d 555, 408 P.2d 1012 (1965) is dispositive. We agree.

In *Baxter–Wyckoff,* the Baxter–Wyckoff Company and the Nettleton Lumber Company sought to enjoin the City of Seattle from collecting certain fees charged in connection with street use permits issued to them and covering their private use of Southwest Florida Street. Baxter–Wyckoff was the lessee of the property abutting on both sides of Southwest Florida Street. Nettleton was an abutting owner of the property adjoining Baxter–Wyckoff's property. Southwest Florida Street had been dedicated to public use and had never been opened. *Baxter–Wyckoff,* at 556.

Virtually the entire street area adjacent to Baxter–Wyckoff's premises was covered with structures and industrial installations comprising a part of the company's wood processing operation. Nettleton used the street abutting its

property for storage and for structures. *Baxter–Wyckoff*, at 557. Baxter–Wyckoff and Nettleton were charged an annual fee for the area devoted to private use under their street use permits. The only portion of Southwest Florida Street used for travel was a 20–foot trestle at the north end of the street which provided vehicular and pedestrian access to Baxter–Wyckoff's and Nettleton's plants. Baxter–Wyckoff and Nettleton refused to pay the fees charged for the street use permits, claiming that the fees as applied to them were invalid because they did not bear a reasonable relation to the cost of administration, inspection, and policing involved in the issuance and continuance of their permits and the use thereby granted. The companies argued that the fees were, in fact, revenue raising charges. *Baxter–Wyckoff*, at 557–58. The trial court made findings of fact supporting the companies' contentions and concluded that the fees were invalid.

The primary issue on appeal was whether the City could charge fees for permission to occupy a portion of a public street for private use. The ordinance involved in the case was Seattle City Ordinance 90047, which provided in section 13, as follows:

> The Board of Public Works of the City of Seattle is hereby further authorized and directed to prepare and adopt a schedule of fees applicable to all such permits heretofore or hereafter issued commensurate with the cost of administration, inspection and policing involved in the issuance and continuance of such permits *and the use thereby granted* . . . . (Italics ours.)

*Baxter–Wyckoff*, at 559–60. The court stated that the general rule is that "there is no inherent right in a private individual to conduct private business in the public streets." *Baxter–Wyckoff*, at 560. The court reasoned that the streets and highways belong to the public and that the State, and City as an arm of the State, has absolute control of the streets in the interest of the public. The court further stated that "the *lack of right* of the abutting owner to so use the street in front of his property does not depend on his interference with an actual or proposed public use of

the street." *Baxter–Wyckoff*, at 561. The court held that the abutting owner has no legal right to make private use of the dedicated public street unless an ordinance expressly authorizes permits for such a use to be issued by the City. The court pointed out that this is so "*even though no member of the public is inconvenienced by the private use.*" (Italics ours.) *Baxter–Wyckoff*, at 561. The court went on to state that it is within the City's discretion to grant permission to an abutting landowner to build permanent structures in the street for private business purposes. *Baxter–Wyckoff*, at 561.

The court, citing 10 E. McQuillin, *Municipal Corporations* § 30.54, recognized that the "rights of abutting property owners are limited to rights of ingress and egress, light, air, water, and certain temporary or nonexclusive uses of the street right of way." *Baxter–Wyckoff*, at 562. The court stated that the permits granted to Baxter–Wyckoff and Nettleton by the City were the grant of mere privileges and that the uses granted could be prohibited by the City absolutely or could be granted upon such terms and conditions as the City may see fit to regulate. Moreover, the court stated that the *conditions under which such a privilege would be granted was a matter entirely within the discretion of the city council, and that courts would not substitute their judgment for that of the municipal authorities.* *Baxter–Wyckoff*, at 562.

The court found that it was clear from both the record and the law that the City was acting within its authority to charge according to the square footage of street area they were using. The court reasoned that "[t]his is a regulation of use, not rental of streets." *Baxter–Wyckoff*, at 563.

The court reasoned that since the City had plenary power to refuse to permit any person to build or maintain in a public street a permanent structure for use in the conduct of his private business, it followed that the City could charge such fees and impose such other conditions with respect to such use as it deemed proper. Consequently, in *Baxter–Wyckoff* the court held that courts may not enjoin

the collection of fees by the City regardless of the amount thereof. "Ordinance No. 90047 is admitted to be valid and we are of the opinion that the fees charged [Baxter–Wyckoff and Nettleton] for the permits issued thereunder may not be reviewed by the courts." *Baxter–Wyckoff*, at 564.[1] Thus, under *Baxter–Wyckoff*, the City has the authority to exact fees pursuant to ordinance 90047 for uses as defined by the ordinance, regardless of the fact that there is no interference with the public's right of way.

Respondent argues that other jurisdictions have held that where the fee is in the abutting landowner, the City may not charge the abutting landowner rent for the use of such space. *See Fort Worth v. Citizens Hotel Co.*, 380 S.W.2d 60 (Tex. Civ. App. 1964); *Sears v. Chicago*, 247 Ill. 204, 93 N.E. 158 (1910); *Tacoma Safety Deposit Co. v. Chicago*, 247 Ill. 192, 93 N.E. 153 (1910). To the extent that these authorities so hold, that is not the law in Washington under the holding in *Baxter–Wyckoff Co. v. Seattle,* 67 Wn.2d 555, 408 P.2d 1012 (1965).

Finally, although we hold that appellant has the authority to exact fees pursuant to the ordinance for uses as defined by the ordinance, we conclude that the City's proof is inadequate to establish whether the alleged areaways exist and if they do exist, whether or not the areaways are in fact in use as defined by the ordinance.

Kazuma Fugita, the senior engineer of the Street Use Department for the City of Seattle between 1970 and 1984, testified that in 1970 he went into all the areaways in the

---

[1]Justice Hunter dissented, concluding that the issue should have been whether the fees charged by the City were reasonably related to the cost of administration, inspection and policing as required under the ordinance. *Baxter–Wyckoff*, at 565 (Hunter, J., dissenting). The trial court found that approximately 1 to 2 hours of time of City employees was required to make an annual inspection of the properties and reissue the permits each year. Justice Hunter concluded that this supported the trial court's conclusion that the fees charged for the street use permits for the years in question bore no reasonable relationship to the cost of administration, inspection, and policing involved in the issuance and continuance of such permits and the use thereby granted, constituting revenue measures under the guise of the police power and therefore were invalid. *Baxter–Wyckoff*, at 566.

City in order to verify their existence and determine their dimensions. This information was then recorded on cards which the City subsequently used to record billing information. Fugita testified that after 1970 the City examined the sidewalks in order to determine whether the areaways still existed. If the sidewalks were new, the City assumed that the areaway beneath the sidewalk had been filled in. John Zavis, Fugita's predecessor, also testified for the City. He testified that he had no personal knowledge as to the existence of the areaways and as to whether the areaways were in fact used. Zavis referred to the cards kept by the City on each areaway in order to answer these questions. In fact, Zavis testified that he did not know which areaways had been walled off, in which case the City does not charge a fee. We agree with respondent that this evidence was inadequate to prove the existence of the areaways and, if they did exist, whether the areaways were in fact in use as defined by the ordinance.

For the reasons stated herein we uphold the validity of the ordinance. We reverse that part of the trial court's judgment that the City may not exact a fee for a de minimis use and remand for entry of judgment in favor of the City respecting that particular use. We affirm the remainder of the trial court's judgment dismissing the City's case for failure of adequate proof.

PEKELIS, J., and WILLIAMS, J. Pro Tem., concur.