R. R. RILEY, *Appellant,* vs. D. B. LAWSON, *Appellee.*

143 So. 619.

Division B.

Opinion filed August 24, 1932.

*T. T. Turnbull, C. A. Avriett* and *W. J. Oven,* for Appellant;

*Stanton Walker,* for Appellee.

DAVIS, J.—Section 25 of Chapter 14764, Acts of 1931, Laws of Florida, (Section 1335-24 C. G. L. 1932 Supp.), provides that an auto transportation company operating upon the highways of this State without first having obtained from the Railroad Commission a certificate or a permit so to do, as provided by said Act, may be enjoined by the courts of this State from such unlawful or unauthorized operation on the highways of this State, at the instance of the Railroad Commission, or any citizen or tax payer.

The appellant, R. R. Riley, alleging himself to be a citizen and tax payer of Hamilton County, sought an injunction against the appellee under the foregoing provision of the statute. The injunction was denied and the bill of complaint dismissed. The case comes here upon an appeal from the final decree denying the relief sought on the ground that as applied to the appellee the statute in question is unconstitutional.

It appears from the bill, and is admitted by the answer, and therefore must be accepted as a fact in the case, that Lawson was engaged in the transportation of freight over the public highways of this State under contract with one or more persons for compensation; that he was engaging in continuous and recurring carriage, and was, under the definition of the Act, "an auto transportation company;" and "a private contract carrier." The roads designated as those over which the defendant was operating were State Roads No's. 1 and 2. The nature of the defendant's operation was charged as being the handling of goods, wares and merchandise by motor vehicles between Jacksonville, Florida, and Jasper, Florida, under contract for hire with

one Corbett and Ratliff, and with one Harrison, both of Hamilton, County, Florida.

It is shown that Jacksonville was not the point of production, primary manufacture or assembling point, and that Jasper was not a point of primary manufacture, assembling or shipping point for the goods hauled, by either rail, water, or motor transportation. It is further shown that all the goods so hauled were used and consumed in Jasper, Florida.

The defense asserted by Lawson is that he was not a common carrier, but was engaged exclusively in transporting goods, wares and merchandise over State Roads Nos. 1 and 2 between Jacksonville, Florida, and Jasper, Florida, for compensation and in continuous and recurring carriage under contract with two named groups of individuals, and for no one else; that he looked only to those two concerns for his compensation; that such compensation was on a flat, definite, agreed amount per trip without reference to and regardless of the amount of tonnage hauled; that therefore he was a "private contract carrier" under the definition of the Act.

The Chancellor found that the defendant was a private contract carrier under the terms of the Act; that he was not a common carrier; that he did not come within any of the exemptions contained in Section 30 of the Act; and that he was engaged in transporting merchandise over the public highways from Jacksonville to Jasper. So finding, the Chancellor held that Chapter 14764, Acts of 1931, *supra*, was unconstitutional as applied to private contract carriers such as Lawson, and denied plaintiff's motion for an injunction and dismissed the bill of complaint.

In Packard v. Banton, 264 U. S. 140, 44 Sup. Ct. 257, 68 L. Ed. 596, it was held that the streets and highways belong to the public and are primarily for the use of the public in the ordinary way; that their use for the pur-

pose of gain is special and extraordinary, and generally, at least, may be prohibited or conditioned as the Legislature deems proper. It was further held in that case that legislative power to exclude altogether the use of the highways for the purpose of gain, includes the lesser power to condition, and may justify a degree of regulation not admissible with regard to the use of the highways by the public in the ordinary way.

In Stephenson v. Binford, 53 Fed. (2nd) 509, it was said: "Standing out in decisions, text books, and law articles is the universally accepted doctrine that the use of the public roads for the conduct of business thereon, is an extraordinary use, and as such is enjoyed, not as a right but as a privilege. That the State may altogether exclude hauling by carrier, common or contract intrastate, from its roads, is generally taken for granted.

In Smith v. Cahoon, 283 U. S. 553, 51 Sup. Ct. Rep. 582, 75 L. Ed. 1264, the Supreme Court of the United States had under consideration the constitutional validity under the Fourteenth Amendment to the Federal Constitution, of Chapter 13700, Acts of 1929, which was superseded by Chapter 14764, Acts of 1931. In that case the *ratio decidendi* of the decision holding the 1929 Act invalid was that the statute either imposed upon the private contract carrier, who was the appellant in that case, obligations to which the State had no constitutional authority to subject him, or it failed to define such obligations as the State did have the right to impose, with that fair degree of certainty which is required of criminal statutes.

The present statute appears to have been passed by the legislature in an attempt to obviate the objections pointed out by the Supreme Court of the United States concerning the former one. We are therefore incidentally called upon to determine in this case whether or not such objections

have been overcome by the terms of Chapter 14764, Acts of 1931, *supra*.

It has been held that the right of the State to regulate the use of the public highways by auto transportation companies operating for hire, is drawn from two distinct sources, to-wit: the nature of the *business* done by such companies on the highways; and the right to conserve and protect the enjoyment by the people of their public highways as viatic ways. Southern Motor Ways, Inc., v. Perry, 39 Fed. (2nd) 145. In that case it was held, and with that rule we agree, that when the public highways are made the place of doing business for compensation, the right to regulate the *use* of the highways by vehicles engaged in such purpose, is primarily to be exercised in the interest of the safety and convenience of the other users of the highway, and of the passengers on the highway themselves, and for the conservation of the public highways. We are further agreed that the last class of regulation arises independently of the nature of the business done by the vehicles regulated.

As we have seen, the State may entirely prohibit vehicular travel on the public highways as a means of conducting a business of transportation for compensation. We have further seen that the right to entirely prohibit such extraordinary use of the highways includes the right to limit and condition the use that is permitted when permission is granted at all. Packard v. Banton, *supra*.

The only limitations found in the adjudicated cases restricting the right of the State to *condition* the use of the public highways as a means of vehicular transportation for compensation, are (1) that the State must not exact from those it permits to use the highways for haulage for gain the condition that the permittee shall surrender any of his inherent Federal constitutional rights as a condition precedent to his obtaining permission for such use; (2)

that the State in permitting such use shall not deny to permittees of the same class the equal protection of the laws which is guaranteed by the Federal Constitution.

Thus it has been held that the State is without power under the Fourteenth Amendment to compel a person to permit himself to be deprived of his property without due process of law by enforcing him to dedicate it to public service as a common carrier for hire as a condition precedent to being permitted to use the highways as a means of engaging in the gainful occupation of haulage. Frost v. Railroad Commission, 271 U. S. 583, 46 Sup. Ct. 605, 70 L. Ed. 1101; 47 A. L. R. 457; Michigan Public Utilities Co. v. Duke, 226 U. S. 570, 45 Sup. Ct. Rep. 91, 69 L. Ed. 445. Nor surrender a privilege of removing a case from the State to the Federal Courts under provisions of Federal law as a condition precedent to enjoying a privilege which might otherwise constitutionally be entirely denied. See Terrell v. Burke Construction Co., 257 U. S. 529, 42 Sup. Ct. Rep. 188, 66 L. Ed. 352. See also Pullman Co. vs. Kansas, 216 U. S. 56, 30 Sup. Ct. Rep. 232, 54 L. Ed. 378; Sioux Remedy Co. v. Cope, 235 U. S. 197, 35 Sup. Ct. Rep. 57, 59 L. Ed. 193; Western Union Tel. Co. v. Foster, 247 U. S. 105, 38 Sup. Ct. Rep. 438, 62 L. Ed. 1006.

That a State is forbidden to deny to any person within its jurisdiction the equal protection of the laws is an express provision of the Fourteenth Amendment to the Federal Constitution. This organic provision guarantees to individuals and to corporations that they shall not by State law be excluded from the enjoyment of privileges which other persons and corporations similarly circumstanced enjoy, or that they may not have imposed upon them burdens from which others similarly circumstanced are free. Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. Rep. 1064, 30 L. Ed. 220. But the equal protection clause of the Fourteenth Amendment does not take away from the State the

power to classify in the adoption of police laws, but admits of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and is purely arbitrary. Lindley vs. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. Rep. 337, 55 L. Ed. 369; Hiers v. Mitchell, 95 Fla. 345, 116 So. Rep. 81.

With the presumption always in favor of the validity of legislation when it is attacked in the courts on the ground that it is unconstitutionally discriminatory under the equal protection clause,* if the courts can conceive of any conditions which will warrant the classification made, they will not interfere to strike the legislation down as a denial of the equal protection of the laws. Dominion Hotel Co. v. Arizona, 249 U. S. 265, 39 Sup. Ct. Rep. 273, 63 L. Ed. 597.

It is therefore pertinent in connection with the present controversy, for us to consider what were the facts and circumstances known to the Legislature when it passed the present statute, and what were the statutory objects to be accomplished by its enactment.

As has been well expressed in the brief filed in this Court by counsel for the Railroad Commission, Chapter 14764, Acts of 1931 *supra,* evidences the purpose of the Legislature to achieve the following results:

"(1)    To furnish the traveling and shipping public a well defined method of securing motor highway transportation, both passenger and freight, in keeping with modern developments, and when such facilities are authorized to reasonably regulate and supervise the industry in the interest of the traveling and shipping public.

(2)    To conserve and protect the State's property, its highway system, against unreasonable abuse and destruction on the part of those using the highways in

---

*See Erb v. Morasch, 177 U. S. 586, 20 Sup. Ct. Rep. 819, 44 L. Ed. 897.

private business for private gain, and to keep the highway system reasonably safe for public use.

(3) To protect and conserve existing transportation facilities against ruthless, unbridled and destructive competition, which if unregulated might seriously impair and ultimately destroy not only itself but other transportation facilities to the public's damage.

(4) To exact compensatory taxes for those using public highways for private profit based on the actual mileage involved, the tax being dedicated to construction, maintenance and upkeep of the State's highway system.

(5) To exempt from regulation and from the compensatory tax involved, those operators other than common carriers whose use of highways is directly in aid of development of agricultural and natural resources, and whose use on account of casual, seasonal and short-haul characteristics, using primarily lateral country and county roads, may be safely and properly classified as not directly concerned in either conservation of the State's highway system or safety thereof as contemplated by the Act.''

The statute was enacted in the interest of the whole State, and the highway system in particular. The operations of Lawson, and others similarly situated to him, constitute a distinct portion of the traffic which the highways are required to bear. It is not material, however, what the proportionate amount of each class of vehicular travel is. Scientific precision is not a criterion of constitutional power under the Fourteenth Amendment. Ohio Oil Company v. Conway, 281 U. S. 146, 50 Sup. Ct. Rep. 310, 74 L. Ed. 775.

Motor Vehicles may properly be treated as a special class. Hendrick v. Maryland, 234 U. S. 610, 35 Sup. Ct. Rep. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 Sup. Ct. Rep. 30, 61 L. Ed. 222; Interstate Buses Corp. v. Blodgett, 276 U. S. 245, 48 Sup. Ct. Rep. 230, 72 L. Ed. 551; Sprout v. South Bend, 277 U. S. 163, 48 Sup. Ct. Rep. 502, 72 L. Ed. 833; Hodge Company v. Cincinnati, 284 U. S. 335, 52 Sup. Ct. Rep. 144, 76 L. Ed. 323. The

State has a distinct public interest in the transportation of persons as distinguished from the transportation of property. It also has a distinct public interest in the transportation of persons and property for hire, whether in common carriage or otherwise, as distinguished from transportation not for hire. In making its classification, the Legislature is entitled to consider frequency and character of use and to adapt its regulation to the classes of operations, which by reason of their extensive, as well as their constant, use of the highways have brought about conditions making special regulations necessary. The State also has a vital interest in the appropriate utilization of the railroads which serve its people, as well as in the proper maintenance of its highways as safe and convenient facilities serving the same or a correlative purpose. The state provides its highways and pays for their up-keep. Its people make railroad transportation possible by the payment of transportation charges. It has therefore been held that the state has a right to foster a fair distribution of traffic to the end that all necessary facilities shall be maintained and that the public shall not be inconvenienced by inordinate uses of its highways for purposes of gain. Sproles v. Binford, 286 U. S. 374, 52 Sup. Ct. Rep. 581, 76 L. Ed. 827, decided May 23, 1932.

Upon the principles just stated, it has been held that private contract motor carriers may be separately classified and dealt with as distinguished from common carriers by motor vehicle. Obligations may be imposed upon private motor carriers when the obligations imposed violate no constitutional restriction and create no unjust discrimination against them *qua* such carriers. A general grant of authority to a public service commission over all motor vehicle carriers of a certain general description, including both public and private carriers, in matters affecting their relationship with the traveling and shipping public must

be taken distributively in the light of the context of the law and of the manifest distinction in the relation of the different sorts of carriers to the public. Limited but important duties are owed by private carriers as well as public carriers, in protecting the public highways from misuse and in insuring safe traffic conditions. Authority given to a public service commission to exercise statutory jurisdiction to regulate private carriers as well as public carriers, must be viewed as having been conferred by the legislature to be exercised according to the limitations placed thereon by organic law. Continental Baking Co. v. Woodring, 286 U. S. 352, 52 Sup. Ct. Rep. 595, 76 L. Ed. 816, decided May 23, 1932.

Chapter 14764, Acts of 1931, *supra,* permits generally the use of the state highways for the purpose of motor carriage of persons and property for hire. But in permitting the general use the statute undertakes to classify the users into three separate and distinct classes. Each of these three separate and distinct classes is placed under the jurisdiction of the State Railroad Commission for the purpose of appropriate regulation pursuant to statutory provisions and subject to the limitations of our system of constitutional law.

The three classes thus identified and defined in the statute are: (1) auto transportation companies operating motor vehicles for the transportation of persons or property as common carriers for compensation; (2) auto transportation companies operating motor vehicles for the transportation of persons or property as private contract carriers for compensation over the highways where such carriage consists of *continuous or recurring* carriage under the same contract; (3) auto transportation companies operating ordinary "for hire" motor vehicles on the public highways in this State in the transportation of persons or property for compensation.

Motor vehicle common carriers and ordinary "for hire" motor vehicle carriers not operating in continuous and recurring carriage are not involved in this case, so we eliminate them from further discussion. It is sufficient to say that there appears to be ample warrant for separately classifying and dealing with those private contract carriers who operate in *continuous and recurring* carriage, from those who operate as simple contract carriers not engaged in operations of *continuous and recurring* carriage.

The former class is in many respects required to conduct its motor vehicle operations in exactly the same manner as a common carrier, as respects the continuous and recurrent use of available road facilities. Therefore many attempted statutory regulations which would be held to be unreasonable and arbitrary as applied to ordinary simple contract carriers, may not be held so with respect to those private contract carriers whose contracts contemplate *continuous and recurrent* operations over the same highways and in the same territory where other transportation by motor or rail is available. "It cannot be said that the state is powerless to protect its highways from being subjected to excessive burdens when other means of transportation are available." (Sproles v. Binford, *supra.*)

It is not a case of permitting the use of the highways to one class of citizens to the unjust exclusion of another, or of imposing limitations having no appropriate relation to highway protection, for the state to so fashion its motor vehicle carrier legislation as to foster a fair distribution of traffic to the end and that all necessary transportation facilities shall be adequately maintained, and the public not be inconvenienced by the impairment or destruction of any of them.

The Legislature in making its classification between ordinary or casual private contract carriers, and those particular private contract carriers who operate in *continuous*

*and recurring* passage along the public roads under special contracts, is entitled to consider frequency and character of use of the public highway facilities, and to adapt its regulations to' those classes of private contract carrier operations, which by reason of their extensive, as well as continuous and recurrent use of the highways, have brought about conditions making such regulations necessary. Continental Baking Co. v. Woodring, *supra;* Sproles v. Binford, *supra.*

Under Section 4 of the Act (Section 1335-4 C. G. L. 1932 Supp.) ; no auto transportation company is permitted to operate any motor vehicle for the transportation of persons or property as a private contract carrier for compensation on any public highway in this State, where the vehicular operation *consists of continuous or recurring carriage under the same contract,* without first having obtained from the Railroad Commission a certificate that public convenience and necessity require such operation. And under that Section application, when made, must be accompanied by the payment of a fee of $50.00 to defray the expense of the hearing which must be had by the Railroad Commission before the certificate of public convenience and necessity applied for can be granted.

In considering applications, the Commission is given power and it is likewise made its duty, at the hearing, to either issue the certificate applied for, or to deny it, or to issue it with modifications, or to grant it, upon terms and conditions, as in the judgment of the Commission the public convenience and necessity may require.

While the statute requires of private contract carriers for compensation on any public highway in this State a certificate that public convenience and necessity requires their operation as such private contract carriers, the statute carries with it its own definition of what is to' be considered as constituting public convenience and necessity for the

operation of a private contract carrier. It is plain from the statute that the showing required to be made by a private contract carrier, operating in continuous or recurring carriage under the same contract, in order to demonstrate public convenience and necessity for the operation of such private contract carrier, does not rest upon the same considerations that are required to be shown in order to demonstrate public convenience and necessity for the operation of common carriers.

In granting certificates of public convenience and necessity to private contract carriers, where the carriage consists of continuous or recurring carriage under the same contract, the Commission in granting any such certificates is required to take into consideration: (a) the effect that the granting of such certificates may have upon transportation facilities within the territory sought to be served by the applicant; (b) congestion of traffic on the highway likely to be caused by the granting of the certificates; (c) the effect that the granting of the certificates will have on the safety of traffic moving on the highways under such operations in relationship to other private or public traffic permitted by law to move over the same road or in the same territory; (d) the adverse effect, if any, the granting of the certificates will have upon transportation as a whole within said territory. See Section 4, Chapter 14764, *supra.*

A statute like this should not be given its broadest construction if its validity can be saved by a narrower one. Sproles v. Binford, 286 U. S. 374, 76 L. Ed. 827.

Applying the foregoing rule of construction to the instant statute, it appears that the proper construction of said Chapter 14764 is that the Railroad Commission, in considering applications under Section 4 of the Act, for certificates of public convenience and necessity for operations by private contract carriers for compensation on any public highway in this State, is required to determine as a con-

dition precedent to the granting of such certificates, whether or not the public convenience and necessity of maintaining and protecting existing transportation systems in the State, and of fostering a fair distribution of traffic on the highways to the end of maintaining all necessary facilities and not inconveniencing the public by inordinate uses of its highways for purposes of gain, will be infringed upon or defeated in any of the statutory particulars hereinbefore mentioned as being required to be considered by the Commission before any such certificates are granted.

It may be said that as a matter of statutory construction it appears that the instant statute construed as a whole, contemplates that ordinarily private contract carriers shall be granted certificates of public convenience and necessity as a matter of course, upon application. There is no statutory requirement, as is the case with common carriers, that any public necessity or demand for the proposed private contract carrier service be shown by an applicant in order to obtain a certificate.

*Public convenience and necessity,* as that term is used in the statute with reference to private contract carriers, means nothing more than a finding by the Commission, that, taking into consideration the stated statutory factors required to be considered as the basis for granting certificates to private contract carriers, the public convenience and necessity for adequate transportation as a whole in the territory involved, will not be unduly burdened or defeated by an inordinate use of the public highways by private contract carriers as a class, considered in relation to the necessary uses of the highways by other classes of motor vehicle traffic, and the necessity for carrying out and protecting the state and national policy of always maintaining adequate systems for transportation by rail.

The statute specifically lays down in terms what factors

shall be considered in determining public convenience and necessity for granting certificates to private contract carriers for haulage in continuous and recurring carriage under their contracts. Whether or not there are factual considerations which exist with reference to the particular business of appellee, which would warrant or require the Commission to deny it a certificate under the foregoing rule of determination, is a question which must be decided in the first instance by the Railroad Commission. Until resort is first had to the Commission, the Courts are without appropriate basis for exercising their jurisdiction to protect any right which the appellee may have to assert to the use of the highways for the purpose of his particular class of carriage.

In this case, the sole question we are concerned with, is whether or not the statute *on its face* is constitutional. We have no question here as to impropriety or illegality of the statute's application to appellee's particular business of carriage. If the power existed in the legislative department of the government to pass such an act, it must be upheld by the courts, notwithstanding that there admittedly may be a possibility of administrative abuse of the powers delegated to the regulatory commission authorized to act under it.

Erroneous applications of a valid statute in the course of its administration, as well as actual abuses under it, are always redressible in appropriate judicial proceedings. But a statute which is valid on its face cannot be entirely ignored by parties subject to its provisions, without incurring the penalties which it provides for the acts of those who ignore or violate it. See Whittaker vs. Parsons, 80 Fla. 352, 86 Sou. Rep. 247, tenth head-note.

The assumption by a motor vehicle operator of the status of a common carrier for hire on the highways of this state, imposes upon such operator the duty to serve the

public in general and to employ the motor vehicles operated by him to an extent necessary to fully perform his obligations as a common carrier for hire. The duty assumed by a common carrier is a legal duty, which arises out of his relation to the public as such carrier under the law. The performance of that duty brings about a condition where, as traffic increases and road facilities become more burdened with vehicles, the public convenience and necessity requires that some regulations be provided to prevent undue wear and tear on the highways themselves, as well as to prevent an inordinate and unnecessary use of the highways for the purpose of conducting a business thereon for profit. The right of the legislature to prescribe reasonable regulations to this end *for common carriers* has never been seriously questioned in any judicial forum.

But it *is* seriously contended in this case that when a motor vehicle carrier engaged in the business for hire, dedicates his vehicles to the exclusive service of one or more specially favored patrons who enter into private contracts with him, the performance of which contracts requires a continuous and recurring use of the public highways in order to perform the voluntarily assumed *contractual* obligation he has incurred, that the fact that the duty being performed is *contractual,* as distinguished from legal, as in the case of a common carrier, takes such private contract carrier out of the scope of those appropriate regulations that admittedly may be imposed upon, and enforced against, common carriers whose operations are no more general, nor greater in continuity and recurrence, than the operations of private contract carriers whose contracts require of them the legally enforceable contractual obligation to make continuous and recurrent use of the public highways in order to perform their contracts.

A contract entered into by a private contract carrier involving continuous and recurring carriage for compensa-

tion under it, involves a legally enforceable *contractual* obligation on the part of such private contract carrier to make a general and continuous use of the public highways in order to perform the contract. Such continuous and recurrent use of the public highways for private gain under special contract, is no different *in its relationship* to other vehicular traffic and other transportation conditions which may be affected by it, than the *relationship* which exists between a common carrier making the same kind of continuous and recurrent use under its public and legal, as distinguished from its contractual, obligation so to do.

Continuous and recurrent use of the public highways of this state for the conduct of a business for private gain, involves the bringing into existence of a class of traffic on the highways which may be perfectly reasonable and proper, or entirely inordinate and hurtful to the general public welfare, depending upon the circumstances under which such traffic will move, as well as the proximate effect which the existence of such traffic will have upon other transportation facilities which public and statutory policy requires to be adequately maintained, fostered and promoted for the general public welfare of the whole state.

The state owns and maintains its public highways system, and can only promote its usefulness at great public expense. The policy of the legislature, as disclosed by its statutory enactments, is to permit the regulated use of the public highways for the conduct of haulage thereover for hire. No one denies that haulage for hire over the public highways might lawfully and constitutionally be forbidden in its entirety. So when the state elects to permit the use of its highway system as a means for the conduct of a transportation business for private gain, it undoubtedly has the constitutional right to provide an administrative agency for determining, in advance of one's being permitted to engage in either the business of a common carrier

for hire, or the business of a private contract carrier for hire, where the business of each involves a continuous and recurring general appropriation of use of the public highways for their special and particular business, whether or note there are any *factual* circumstances surrounding the proposed operation, which will result in public detriment either by permittinig an abuse of the state's property in the highways themselves, or by allowing on particular roads or in particular localities a burden of unnecessary traffic, which will result in injury to the public welfare. ''It cannot be said that the state is powerless to protect its highways from being subjected to excessive burdens when other means of transportation are available.'' Sproles v. Binford, supra, text page 836, 76 L. Ed.

The state has the right to foster a fair distribution of traffic between private contract carriers and common carriers who operate under similar conditions and make a similar general use of the available highways facilities. It also has the right to extend its protection to securing continued utilization of the railroad systems which serve the people, and which national as well as state policy, requires shall be adequately maintained and kept available for public utility and service. And to that end the state may protect the highways from excessive burdens of motor vehicle haulage, where particular circumstances warrant the exclusion or limitation of non-essential haulage as a matter of protecting the interests of all, *or as a matter of protection of the interests of the greatest number.**

---

*When the public interest is involved, preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of the police power. Miller vs. Schoene, 276 U. S. 272, 48 Sup. Ct. 246, 72 L. Ed. 578. Therefore if the paramount public interest requires that preferential treatment in use of the public highways be accorded to those carriers who serve the general public, as against those who serve special contractors only, it cannot be denied that as a matter of constitutional law. the legislature has the *power* to enact laws having that effect, and that such laws will be sustained by the Courts in all cases where they are not clearly shown to be arbitrary and a palpable abuse of legislative power by their enactment. Whether the power shall be exercised at all or not, and to what extent, is a legislative question and not one for the courts, in ordinary cases.

The fact that section 4 of Chapter 14764, Acts of 1931, imposes some of the same conditions, and requires the assumption of some of the same burdens, by contract carriers, as are imposed by the statute on common carriers, does not prove the invalidity of the requirements of the statute as applied to private contract carriers. There is no provision of the constitution of the United States or of this state, which forbids the making and enforcement of regulations against private contract carriers, which are appropriate for such carriers in their status as such, merely because many, if not all, of the same regulations have been likewise imposed on common carriers.

The test of validity as to regulations imposed on private contract carriers operating in continuous and recurrent carriage under the same contract, is whether or not the regulations imposed are *appropriate* for this kind of carrier. If the regulations imposed are *appropriate,* and are not unjustly discriminatory against private contract carriers as a class, merely because they are such carriers, and they do not unduly interfere with the right of property management ·of such carriers, nor require them to agree to assume unwilling and unconstitutional burdens, as a condition precedent to enjoying an otherwise enjoyable legal right given to them, the statute imposing such regulations is not rendered invalid by the mere fact that the same, and no greater regulations, are likewise imposed on common carriers, or by the circumstance that none of them are imposed upon other classes of private contract carriers, not operating in continuous and recurrent carriage on the public highways of the state.

We regard the terms and conditions of Section 4 of the Act as an appropriate regulation of the right to use the public highways of this state as a means for conducting the business of a private contract carrier for hire in continuous and recurrent carriage under the same contract.

Insofar as such provisions have been attacked in this litigation as being unconstitutional and unenforceable *on their face*, without regard to the actual factual situation of the complainant who may or may not in fact be adversely interfered with thereby in the course of practical administration of the statute, we hold that section 4 of the act is constitutional and valid.

It is also provided by an additional clause of the statute, that when an application is made by an auto transportation company for a certificate to operate as a private contract carrier, where the carriage consists of continuous or recurring carriage under the same contract, and the application relates to a territory or to a line already served by a certificate holder, the Commission shall grant same only when it appears that the existing certificate holder, or holders, serving such territory shall have failed to provide service and facilities which may be reasonably required by the Commission.

In the case at bar, however, no basis is made to appear in the record for our consideration and determination of the constitutionality of this latter provision ·as applied to such a private contract carrier as Lawson purports to be. For this reason neither the applicability nor the validity, of this last mentioned provision of the Act as applied to a carrier like appellee can be passed upon in the present proceeding. And indeed the Railroad Commission has removed that provision from present consideration by announcing its intent not to enforce it on the ground that it is unenforceable. We are of the opinion, however, that the authorities that we have heretofore cited sustain the constitutionality and enforceability of that portion of Section 4 of the statute which provides that no auto transportation company shall operate any motor vehicle for the transportation of persons or property as a private contract carrier for compensation on any public highway in this State,

*where such operation of continuous or recurring carriage,* under the same contract, without first having obtained from the Railroad Commission a certificate that public convenience and necessity require such operation.*

Such a statutory requirement does not *ex proprio vigore* attempt to compel private carriers to become public carriers merely because it imposes upon such carriers the duty to seek certificates permitting them to operate motor vehicles along the highways in continuous or recurring carriage under the same contract. Nor is the right to freedom of contract unduly infringed upon, because interference therewith is wrought by the enforcement of the statute, the interference being merely incidental to the main object of the regulation. The rule is that, if the power exists to accomplish the regulation attempted, such interference with the right to contract is justified as an aid to its exercise. Chicago, B. & Q. R. R. Co. v. McGuire, 219 U. S. 549, 31 Sup. Ct. Rep. 259, 55 L. Ed. 328.

The conditions required to be taken into consideration by the Commission as the basis for granting or denying the certificates required of private contract carriers operating in continuous and recurring carriage under the same contract, are reasonably defined in the Act, and are in effect nothing more than the exercise of the power of the Legislature to have considered by its statutory governmental fact finding agency, the Railroad Commission, the relationship of the proposed new operation to the frequency and character of the use of the highways, as a means of fostering a fair distribution of motor vehicle traffic on the public roads of this State to the end that all necessary facilities for transportation shall be maintained, and the public not be inconvenienced by the inordinate uses of its highways for

---

*The factor of continuous and recurring carriage creates a traffic condition on the highways which justifies special regulations based on such factor.

purposes of gain. Such a statutory provision is not beyond the legislative power of the State. See Sproles v. Binford, *supra*.

We are called on to decide a question of statutory power, —not a question of legislative policy. If the provision of the statute which required the appellee, Lawson, to apply for and obtain a certificate of public convenience and necessity for his operations as a private contract carrier, because his carriage consisted of continuous or recurring carriage under the same contract, is valid on its face, appellee was bound by the law to take steps to comply therewith before he can be heard to assert a right to continue to carry on his operations which are prohibited by law in all cases where no certificate has been obtained.

Under Section 2 of the Act (Section 1335-2 C. G. L., 1932 Supp.), appellee was in express terms prohibited from operating any motor vehicle for transportation of persons or property for compensation on the public highways in this state, in the status under which he undertook to operate, without first obtaining from the Railroad Commission a certificate of public convenience and necessity therefor. And under Section 24 of the Act (Section 1335-25 C. G. L. 1932 Supp.) appellant was entitled to an injunction to restrain the operations by appellee which he complained of, until the provisions of the statute had been complied with.

Furthermore, the provisions of the Act requiring Lawson to apply for and obtain a certificate of public convenience and necessity, can stand and be enforced, even though it be conceded that the statute as a whole contains other provisions inapplicable to private contract carriers like the appellee, or contains other burdens that are unconstitutional when applied to private contract carriers not engaged (as appellee admits himself to be) in continuous and recurring carriage under contract.

If the Railroad Commission is applied to by appellee and

refuses to grant a certificate of public convenience and necessity to him upon his proper application and showing, therefor, provided it is made to appear by him that he is entitled thereto, or if the Railroad Commission seeks to revoke a certificate already granted, because the appellee refuses to comply with statutory provisions, or with rules and regulations, inconsistent with the Constitution of the United States or of this State, the rights of appellee as such applicant can be protected and enforced by appropriate judicial proceedings. Cargill Co. vs. Minnesota, 180 U. S. 452, 21 Sup. Ct. Rep. 423, 45 L. Ed. 619.

Where the requirement of a statute exacting from a motor carrier a certificate of public convenience and necessity as a condition precedent to his use of the public highways as a means of conducting his private business of transportation by motor carrier for hire is valid, such operator is bound to comply therewith by attempting to obtain the required certificate or submit to the penalty of restraint by injunction authorized by the statute to forbid his operation until he does so. See Cargill Co. v. Minnesota, *supra*.

Appellee also contends that the Act attacked is unconstitutional because it contains a plurality of subjects in violation of Section 16 of Article III of the Constitution.

A sufficient answer to this contention is that a scheme for the regulation of business and traffic by motor carriers can be discerned in the terms of the Act which undertakes to embrace within its orbit all generally recognized classes of use of the public highways of this State as a means of conducting thereon the business of carriage of persons or property by motor vehicles for hire. This is the one general subject of the Act and that subject is sufficiently expressed in the title.

The provision of the Constitution prohibiting a plurality of subjects in one and the same law is to prevent a single enactment from becoming a cloak for legislation upon dis-

similar matters and not to prevent the inclusion in one Act of several connected and properly related phases of the same general subject. State v. Bryan, 50 Fla. 293, 39 Sou. Rep. 929; Cahoon v. Smith, 99 Fla. 1174, 128 Sou. Rep. 632; Amos v. Mathews, 99 Fla. 1, 126 Sou. Rep. 308.

We hold, therefore, that the title to Chapter 14764, Acts of 1931, Laws of Florida, is sufficient to cover the enactment of the statutory provisions incorporated in, and intended to be comprehended thereby, and is not violative of Section 16 of Article III of the Constitution, as applied to the controversy here considered.

Lawson, the appellee, though admittedly a private contract carrier engaged in carriage for hire under a continuous and recurring operation, and entitled by law to maintain that status and assume none more burdensome against his will, is not required by any provision of the Act to surrender any Federal constitutional right as a condition precedent to exercising the privilege of using the highways as a means of conducting his business for gain,— a privilege the statute undertakes to give him under reasonable regulations. The statute is not indefinite as to its requirements as applied to appellee, nor does its enforcement present any case of arbitrary discrimination such as was held to be the case in Smith vs. Cahoon, 283 U. S. 553, 51 Sup. Ct. Rep. 582, 75 L. Ed. 1264.

The contention that the Act provides for unconstitutional and unjust exemptions from its operation such as are specified in Section 30 (Section 1336-29 C. G. L., 1932 Suppl.), and that thereby the appellee is denied the equal protection of the laws in violation of the Federal Constitution, has been considered but is not sustained. The Section complained of is as follows:

"Recognizing and declaring the transportation exempted in this section is casual, seasonal and not on regular routes or schedules, is slow moving, frequently in special equipment, and for comparatively short dis-

tances over the improved highways of the State, there shall be exempted from the provisions of this Article, and from commission jurisdiction and control, motor vehicles (other than those engaged in common carrier service) used exclusively in transporting children to and from schools; transportation companies engaged in taxicab service, or the operation of hotel busses to or from depots and hotels, serving the same town or city; and motor vehicles while engaged exclusively in transporting goods, wares, merchandise, horticultural, agricultural, and/or logs, lumber or other forest products, fish, oysters and shrimp, and dairy products, from the point of production to the point of primary manufacture, or from the point of production to the point of assembling the same, or from either such point of production, primary manufacture or assembling to a shipping point of either a rail, water or motor transportation company, usually and generally serving the territory in which said production, manufacture or assembling takes place. There shall be further exempted from the provisions of this Article and from commission jurisdiction and control, persons, firms or corporations operating motor vehicles within the corporation limits of any city or town or the adjoining suburban territory, or between cities and towns whose boundaries adjoin, where such business or carriage is regulated by the legislative body of such cities or towns.

Nothing in this Article contained shall be construed or applied to require any private motor vehicle engaged in the transportation of goods wares or merchandise belonging to the owner or operator of such vehicle to secure a permit or a certificate of public convenience and necessity under the provisions of this Article or to become subject to regulations prescribed by this Article or by the railroad commission in respect to common, private contract or for hire carriage, or to pay the mileage tax provided by this Article. Casual or irregular trips by motor vehicles not engaged in the business of for hire carriage but operated under private license shall not subject such motor vehicles to the provisions

of this Article so long as such motor vehicles may not lawfully be required to operate under for hire license tags.''

The fact that the Act could have been extended to embrace those classes of motor traffic which have been excluded is not necessarily proof of unjust discrimination or denial of the equal protection of the laws.

All State laws need not be perfect nor is it necessary that they cover the entire field of permissible legislative action at one time. Middleton v. Texas Power & Light Co., 249 U. S. 152, 39 Sup. Ct. Rep. 227, 63 L. Ed. 527; Rosenthal v. New York, 226 U. S. 250, 33 Sup. Ct. Rep. 27, 57 L. Ed. 212. The conditions of transportation recited in the Act as applicable to those attempted to be exempted, excluded by their own terms continuous and recurring carriage, because seasonal and casual carriage is essentially different from continuous and recurring carriage. Such manifest differences in the *traffic* conditions necessarily resulting from slow moving, intermittent, casual or seasonal haulage, as compared with continuous and recurring haulage, appear constitutionally sufficient to justify the classification made. And we must sustain it in the absence of demonstration beyond a reasonable doubt that no state of facts relating to one class of traffic as compared with the other can reasonably be conceived which will prevent the attempted distinction being considered unreasonable and arbitrary in its practical operation and effect. Erb v. Morasch, 177 U. S. 586, 20 Sup. Ct. Rep. 819, 44 L. Ed. 897; State v. Le Febvre, 174 Minn. 248, 219 N. W. 167; Maxcy, Inv., v. Mayo, Commr., 103 Fla. 552, 139 Sou. Rep. 121; Hiers v. Mitchell, 95 Fla. 345, 116 Sou. Rep. 81.

What we have said is sufficient to dispose of the pending appeal, which is from the decree of the Circuit Court hold-

ing the statute unconstitutional insofar as it required appellee as a private contract carrier engaged in continuous and recurring carriage to obtain a certificate of public convenience and necessity or be enjoined in his operations. It is with that question alone that we have undertaken to deal in the present case.

The statute being valid on its face and the title being sufficient to cover an enactment of the character resulting, the injunction applied for was improperly denied and the bill of complaint was erroneously dismissed.

Other questions have been raised and attempted to be presented but have not been discussed in this opinion, because they are not properly before us for consideration.

If the appellee hereafter applies for and is lawfully denied a certificate of public convenience and necessity, the taxing and regulatory provisions of the Act cannot be applied to him so he will have no ground of complaint, whether they are valid or not. Appellee in that situation would not be in position to raise questions concerning which he demonstrates a lack of interest in having them decided. City of Sebring v. Wolf, 105 Fla. 516, 141 Sou. Rep. 736. A wrongful denial is likewise redressible by an appropriate remedy to review the act of refusal.

On the other hand, should appellee apply for and obtain a certificate of public convenience and necessity, and the Railroad Commission should thereafter attempt to enforce against him any provision of the statute which is not legally applicable or invalid, or any rule or regulation which is beyond the power of the Commission to prescribe or enforce, an adequate remedy therefor can be asserted hereafter by due course of legal procedure under the principles heretofore referred to as enunciated in Cargill Co. v. Minnesota, 180 U. S. 452, 21 Sup. Ct. Rep. 423, 45 L. Ed. 619.

The decree appealed from is reversed and the cause re-

manded with directions to re-instate the bill and grant the injunction prayed for.

Reversed with directions.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, J.J., concur.