STATE, *ex rel.* CHESTER FOHL, v. FRANK KAREL, as Sheriff of Orange County.

180 So. 3.

En Banc.

Opinion Filed October 28, 1937.

On Rehearing March 30, 1938.

306

*Maguire & Voorhis, for Petitioner;*

*Theo. T. Turnbull* and *Wm. P. Simmons, Jr.,* for Respondent.

PER CURIAM.—In this Habeas Corpus proceeding Mr. Chief Justice ELLIS, Mr. Justice TERRELL and Mr. Justice CHAPMAN are of the opinion that the affidavit and warrant under which Petitioner is held failed to allege a criminal offense and that therefore the Petitioner should be discharged from custody, while Mr. Justice WHITFIELD, Mr. Justice BROWN and Mr. Justice BUFORD are of a contrary opinion and think the Petitioner should be remanded to the custody of the Respondent. When the members of the Supreme Court, sitting six members in a body and after full consideration, are permanently and equally divided in opinion as to whether the Petitioner should be discharged or remanded and there is no prospect of an immediate change in the personnel of the Court, the Petitioner must be remanded to the custody of the Respondent and it is so ordered in this cause.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.

CHAPMAN, J.—On February 12, 1937, E. T. Hamil made affidavit before E. G. Duckworth, Justice of the Peace, First District of Orange County, Florida, charging a violation of Chapter 14746, Acts of 1931, in the following language:

"Chester Fohl was driving, operating, or causing to be operated a motor propelled vehicle, to-wit: A Reo Speed

Wagon, Pennsylvania 1937 license V734B, and semi-trailer, Pennsylvania 1937 license Tag No. 0741, said vehicle being used upon the highways of the County of Orange in said Justice District, and State of Florida, for the transportation of property for compensation in violation of Chapter 14,764, Acts of 1931, Laws of Florida.

"2. Said defendant has not complied with the police regulations of the State of Florida as set forth in Chapter 14,746, Acts of 1931, Laws of Florida, and has not paid to the State of Florida, mileage tax lawfully due to the State of Florida, by virtue of such operation over the highways of the State.

"3. The State Railroad Commission has not given its consent or approval to any operation in said County and Justice District, by the said Chester Fohl, for the transportation of property for compensation over the public highways of the State of Florida, and the said Chester Fohl not having had assigned routes, secured number plates, filed public liability and property damage insurance, nor complied with other police regulations of Chapter 14,764, Acts of 1931, Laws of Florida."

A warrant issued on said affidavit and the defendant taken into custody and at a hearing held on June 24, 1937, on the following stipulation of facts, Chester Fohl was remanded to the custody of the Sheriff of Orange County, Florida, viz.:

"1. That on February 12, 1937, Rice, Trew & Rice Company, Inc., and Walter Howe jointly owned the truck described in the information in this cause and then being driven by Chester Fohl, an employee.

"2. That on the occasion of the arrest of Chester Fohl, on February 12, 1937, he was entering Orlando, Florida, from Biglerville, Pennsylvania, with a load of Growers'

supplies, produced and owned by Rice, Trew & Rice Company, Inc., and being transported in the truck aforesaid from Rice, Trew & Rice Company, Inc., at Biglerville, Pennsylvania, to Rice, Trew & Rice Company, Inc., at Orlando, Florida; that in the transportation of such goods the said Chester Fohl was subject to the direction, under the control of and operating for Rice, Trew & Rice Company, Inc., and that the said Chester Fohl was then and there an employee and receiving wages only for his services and no other kind of compensation.

"3. That the said truck so owned by Rice, Trew & Rice Company, Inc., and Walter Howe was operated on its trips into Florida on the following basis and no other: That it made trips from Biglerville, Pennsylvania, to Orlando, Florida, and in the making of such trips it transported growers' supplies to be used by growers and shippers in Florida to whom said goods were sold in this State by Rice, Trew & Rice Company, Inc., and that at all times during the transportation of such goods and supplies they belonged to, were the property of and were produced by Rice, Trew & Rice Company, Inc.; that upon said truck reaching Orlando, Florida, it would take on a load of citrus fruits or vegetables there purchased by Walter Howe, and at the time said citrus fruits and vegetables were loaded upon said truck they were the property of Walter Howe, and transported to him at Biglerville, Pa., for sale there through his produce store; that on return trips from Florida said truck was not used for any other purpose or purposes whatsoever and was at all times subject to the direction of Walter Howe as was his employee, Chester Fohl.

"4. That in the transportation of said goods no profits whatsoever therefrom are realized by Rice, Trew & Rice Company, Inc., or by Walter Howe from the operation of

said truck; that they tentatively estimate the actual cost of the operation of said truck at ten cents per mile and contribute accordingly to a common fund for the purpose of defraying the actual expenses incident to operating same, out of which fund the truck is maintained and the truck driver is paid, and Walter Howe is paid a wage of $20.00 per week for supervising said operation; that in the event such common fund so contributed to exceeds the actual cost of such operation, then from time to time Rice, Trew & Rice Company, Inc., and Walter Howe are reimbursed to the extent of such excess in said common operating fund.

"5. That the operation charged by said warrant as constituting a violation of Chapter 14764, Laws of Florida, Acts of 1931, consists of and is limited to the transportation of the goods of Rice, Trew & Rice Company, Inc., to and for Rice, Trew & Rice Company, Inc., from Biglerville, Pa., to Orlando, Florida, on February 12, 1937."

On June 28, 1937, petitioner represented to this Court that he was illegally deprived of his personal liberty and detained in custody without lawful authority by Frank Karel, as Sheriff of Orange County, Florida. A writ of habeas corpus issued and the cause is now before this Court.

The question for decision is: from the above statement of facts are Rice, Trew & Rice and Walter Howe required to obtain from the Florida Railroad Commission a certificate of public convenience and necessity or permit?

The intention of Chapter 14764 is to protect our system of highways and in doing so considerable authority is lodged with the Railroad Commission wherein it has power to fix the weight, width, height and length of motor vehicles traveling the public highways of Florida. All transportation companies for hire are required to obtain certificates

of public convenience and necessity from the Railroad Commission prior to the use of the public highways, but a certificate of public convenience and necessity is not required of those using the highways for transportation purposes not for hire, where the same is incidental to their said business or businesses. See Section 30, Chapter 14764, Acts of 1931:

"* * * Nothing in this Act contained shall be construed or applied to require any private motor vehicle engaged in the transportation of goods, wares or merchandise belonging to the owner or operator of such vehicle to secure a permit or a certificate of Public Convenience and Necessity under the provisions of this Act or to become subject to regulations prescribed by this Act or by the Railroad Commission in respect to common, private contract or for hire carriage, or to pay the mileage tax provided by this Act. * * *"

Our Supreme Court in Coleman v. Achim, 114 Fla. 91, 153 Sou. Rep. 96, speaking through Mr. Justice BUFORD, said:

"It may be said that Chapter 14764 was enacted primarily to authorize State supervision and control of motor vehicles operated for hire on the public highways of the State of Florida and that public welfare was the prime consideration for the enactment of the statute. When the State assumed to supervise and control the operation of motor vehicles for hire on the State highways, it became the duty of the State to cast reasonable provisions for protection around those vehicles and the operators thereof which were required to comply with the law and it also became the duty of the State to enact provisions for the protection of the public in connection with the use by the public of such motor vehicles."

The rights of citizens and their use of the highways for the transportation of property was considered in suit of State v. Quigg, 94 Fla. 1056, text p. 1066, 114 Sou. Rep. 859, and the following language was used:

" 'The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highways his place of business and uses it for private gain in the running of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities.' "

The right to use the highways is treated in 13 R. C. L. p. 253, par. 209:

"The right to use the highway and streets for purposes of travel, however, is not an absolute and unqualified one, but may be limited and controlled by the State in the exercise of its police power, whenever necessary to provide for and promote the safety, peace, health, morals, and general welfare of the people, and is subject to such reasonable and impartial regulations adopted pursuant to this power as are calculated to secure to the general public the largest practical benefit from the enjoyment of the easement, and to provide for their safety while using it. * * * It is the province of the Legislature to decide upon the wisdom and expediency of such regulations annd restraints, and the courts cannot declare them void, or interfere with their

operation, unless they are so manifestly unjust and unreasonable as to destroy the lawful use of property, and hence are not within the proper exercise of the police power of the government. * * *"

See Merchants Mutual Association, Inc., v. Matthews, 110 Fla. 325, text p. 329, 149 Sou. Rep. 27.

An application of the principle of law controlling this suit to the admitted statement of facts clearly shows that the affidavit and warrant under which petitioner is held fail to allege a criminal offense and for this reason the petitioner is discharged from custody, and it is so ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, BROWN and BUFORD, J. J., dissent.

BUFORD (dissenting).—I think the petitioner should be remanded on authority of the law as enunciated in the opinion and judgment in the case of Merchants Mutual Association, Inc., v. Matthews, 110 Fla. 325, 149 So. 27.

WHITFIELD and BROWN, J. J., concur.

## ON REHEARING

BROWN, J.—After the original hearing in this case, an opinion was prepared by Mr. Justice CHAPMAN in which it was held that under the admitted statement of facts in this case the affidavit and warrant under which petitioner was held in custody failed to allege any violation of Chapter 14,764, Acts of 1931, and that the petitioner should therefore be discharged from the custody of the respondent sheriff. In that opinion Mr. Chief Justice ELLIS and Mr. Justice TERRELL concurred, while Mr. Presiding Justice WHITFIELD, Mr. Justice BUFORD and the writer dissented. The result was that an order was made remanding petitioner to the custody of the respondent.

Mr. Justice BUFORD wrote a short dissenting opinion to the opinion prepared by Mr. Justice CHAPMAN, which read as follows:

"I think the petitioner should be remanded on authority of the law as enunciated in the opinion and judgment in the case of Merchants Mutual Association, Inc., v. Matthews, 110 Fla. 325, 149 So. 27."

Mr. Justice WHITFIELD and the writer concurred in this dissent.

Later a rehearing was granted and reargument of the case allowed. Upon reconsidering the question involved on this rehearing, the writer has reached the conclusion that the facts of this case do not bring it within the operation of the principles enunciated in the Merchants Mutual Association, Inc., v. Matthews, *supra*. The stipulation of facts in this case, upon which the hearing was had, is set forth in the opinion of Mr. Justice CHAPMAN.

The general subject of Chapter 14,764, as expressed in the title is "The supervision and regulation of persons, firms, corporations annd associations, owning, controlling, operating or managing motor vehicles used in the business of transporting persons or property for compensation over the public highways of the State." All else in the title is merely expressive of that which is intended to be germane to the general subject of the Act. Thus in the case of Riley v. Lawson, 106 Fla. 521, 143 So. 619, this court, speaking through the late Mr. Justice DAVIS, said:

"Appellee also contends that the Act attacked is unconstitutional because it contains a plurality of subjects in violation of Section 16 of Article III of the Constitution. A sufficient answer to this contention is that a scheme for the regulation of business and traffic by motor carriages can be discerned in the terms of the Act which undertakes

to embrace within its orbit all generally recognized classes of use of the public highways of this State as a means of conducting thereon the business of carriage of persons or property by motor vehicles for hire. This is the one general subject of the Act and that subject is sufficiently expressed in the title."

In Merchants Mutual Association, Inc., v. Matthews, *supra,* we were dealing with a corporate entity, avowedly engaged in the business of transportation of goods, wares and merchandise of its stockholders by the use of motor trucks, for compensation. True, it was a non-profit corporation, and its articles of incorporation provided that it could carry on a cooperative transfer and hauling business for the benefit and convenience of its members and stockholders only, by the operation of one or more motor vehicles and trailers, and would perform such services for its stockholders at the actual cost thereof. In the opinion in that case, which was written by Mr. Justice BUFORD, this Court said: "Chapter 14764, Acts of 1931, provides among other things (Sec. 1, par. '1') :

" 'The Term "Private Contract Carrier" where used in this Act shall mean an auto transportation company engaged in the transportation of persons or property over the public highways of this State who is not a common carrier but transports such persons or property under contract for one or more persons, firms or corporations for compensation over such highways, where such carriage consists of continuous or recurring carriage under the same contract.' "

"The appellant is a corporation organized for the express purpose of conducting the business of hauling by use of its motor trucks, on the public highways of Florida, for compensation, the goods, wares and merchandise of its stockholders *only.* Under its charter, it must haul for its

stockholders at cost and without profit. The pleadings admit that the corporation *does so contract* with and so serve its stockholders. The terms of the contract are mere incidents to the transaction of the business."

"By limiting its patronage to its stockholders the corporation successfully eliminates itself from the classification of common carrier, but by the very terms of its charter and by its admitted contracts with its stockholders it brings itself within the purview of the statute regulating "Private Contract Carriers."

"Section 4 of Chapter 14764, *supra,* gives the Railroad Commission of the State of Florida supervisory jurisdiction over private contract carriers and requires such carriers to comply with the provisions thereof before engaging in such business.

"The record shows that the appellant has not complied with these provisions of the statute."

Section 4 of Chapter 14,764, provides among other things that:

"No auto transportation Company shall operate any motor vehicle for the transportation of persons or property as a private contract carrier for compensation on any public highway in this state without first having obtained from the Railroad Commission a certificate that public convenience and necessity requires such operation."

Elsewhere in the Act it is said that the term "auto transportation company" means every corporation or person, their lessees, etc., owning, controlling or operating any motor vehicle "used in the business of transporting persons or property for compensation over any public highway in this state." And the Act also says that the word "corporation" when used in the Act means "a corporation, a company, association, or joint stock association."

In this case a corporation dealing in growers supplies produced by it, and an individual dealing in citrus fruits and vegetables purchased and owned by him, jointly owned a truck and employed a person to operate the same for the purpose of transporting, for the corporation its supplies from a point in Pennsylvania to Orlando, Florida, and on the return trip to transport the produce of the dealer in citrus fruits and vegetables from Orlando, Florida, to said point in Pennsylvania. When the truck was making a trip from Biglerville, Pennsylvania, for Rice, Trew & Rice to Orlando, Florida, it was transporting the goods of Rice, Trew & Rice for delivery to themselves at Orlando, Florida, and when making a trip from Orlando, Florida, back to Biglerville, it was transporting the citrus fruits and vegetables of Walter Howe of Orlando, Florida, to himself in Biglerville, Pennsylvania. Walter Howe supervised the truck operations receiving therefor a wage of $20.00 per week. The actual cost of operating and maintaining the truck was paid out of a common fund for that purpose. The amount contributed towards such common fund was tentatively estimated at ten cents per mile, but should such estimate exceed the cost of operation from time to time, Rice, Trew & Rice, Inc., and Walter Howe, were each reimbursed to the extent of such excess in said operating fund.

So the question here presented is this: where two merchants jointly own a truck and employ a person to operate the same for the sole purpose of transporting their own goods, each of them paying an amount equal to the cost of the hauling done for each of them, the operation of the truck being incidental to the carrying on of their respective mercantile businesses, are such merchants required by Chap-

ter 14,764, Acts of 1931, to obtain a certificate of public convenience annd necessity, or a permit?

Evidently Chapter 14,764, was aimed merely at those who operate motor vehicles for compensation, and was not intended to apply to persons, firms or corporations engaged in transporting their own goods over the public highways as a mere incident to their mercantile or other private business. The cases of State v. Quigg, 94 Fla. 1057, 114 So. 859, 853; Fla. Motor Lines v. State Railroad Commission, 101 Fla. 1018, 132 So. 851 and State v. York, 90 Fla. 625, 106 So. 418, tend to support this position.

"It is obvious that those who operate motor vehicles for the transportation of persons or property for hire enjoy a different and more extensive use of the public highways * * * Such extraordinary use constitutes a natural distinction and a full justification for their separate classification and for relieving from the burden of the license tax those who merely employ the public highways for the transportation of their own property or employees."

Bacon Service Corporation v. Russ, 199 Cal. 21, 248 P. 235.

"One who transports his own freight over the highway is not a carrier, private or otherwise. He may be a farmer or a manufacturer or a merchant or what not, but the business in which he is engaged is not the business of transportation. He is not a carrier unless he engaged in the business of transportation of the persons or property of others for compensation. One, who transports merely his own goods, is of necessity engaged in some business other than transportation, and the transportation of such goods is no more than an incident to such business. So, also, one, who transports the goods of another as a servant or agent of such other, is not engaged in the business of

transportation, but in so doing is engaged in the business of his master or principal, whatever that business may be."

Holmes v. Railroad Commission, 197 Cal. 627, 242 P. 486.

The business of a carrier by motor vehicle, whether as a common carrier or as a contract carrier, is affected with a public interest and therefore within the scope of the Act and the jurisdiction of the Railroad Commission. Georgia Public Service Commission v. S. & D. Transfer Company, 170 Ga. 783, 154 S. E. 437; Seaboard Airline Railway Co. v. Wells, 100 Fla. 1027, 130 So. 587; Riley v. Lawson, 106 Fla. 521, 142 So. 626.

In behalf of the respondent it is contended that this arrangement between these two merchants resulted in the formation of an association or partnership, an entity of some sort, which was an "auto transportation company," transporting goods for compensation within the meaning of the Act. Our own view is that Rice, Trew & Rice, Inc., and Walter Howe, who, as shown by the stipulation of facts, jointly owned the motor truck in question, held this truck as tenants in common, each being entitled to the possession and use of the truck, the limitation of the right of each being that he is bound to so exercise his rights in the truck as not to interfere with the rights of his co-tenant; 7 R. C. L. 809-823; 62 C. J. 408, 421, 423; the possession of one being the possession of both, but it being competent for them to agree among themselves as to the exercise of such possession among themselves. But even if this arrangement between them, shown by the stipulation of facts, resulted in the formation of "an association" or partnership, it is not shown that such association or partnership was in the business of transporting goods for compensation. The joint owners were merely using their own truck to

transport their own goods, at their own expense, and as a mere incident to the conduct of their respective mercantile businesses. The legislative Act in question does not purport to regulate partnerships as such or to place any greater burden of regulation upon them than it places on the individual. It is not the character or tenure of ownerships, but the peculiar nature of the business conducted upon and over the public highways that justifies the classification made by the statute for licensing purposes.

Counsel for the Railroad Commission appear to contend that this case merely is an evasion of an attempt to evade the application of the Act, and if it be permitted in this case it will open the door to other evasions. This is hardly probable. As was said by Mr. Justice HOLMES in Butler v. Wisconsin, 240 U. S. 625, 60 L. Ed. 835; "We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is not the worse legally that a party has availed himself to the full of what the law permits. When an Act is condemned as an evasion, what is meant is that it is on the wrong side of the line indicated by the policy if not by the mere letter of the law."

What we have here is merely a case where two merchants jointly own a motor truck which they are operating in the transportation, not for compensation, but the transportation at their own expense, of their own goods, as an incident to their business.

For these reasons I concur in the opinion heretofore written by Mr. Justice CHAPMAN, and which was concurred in by Mr. Chief Justice ELLIS and Mr. Justice TERRELL, and in their conclusion that the joint owners of this truck were not required under the facts of this case to obtain from the Railroad Commission a certificate of public convenience

and necessity, or a permit, under Chapter 14,764, and that the petitioner should therefore be discharged from custody.

ELLIS, C. J., and TERRELL and CHAPMAN, J. J., concur.

WHITFIELD and BUFORD, J. J., dissent.