[No. 1725-1.   Division One.   June 11, 1973.]

LEO J. PEDEN, *Appellant*, v. THE CITY OF SEATTLE *et al.*, *Respondents.*

*Leo J. Peden*, pro se.

*A. L. Newbould, Corporation Counsel, J. Roger Nowell, Assistant, Slade Gorton, Attorney General, Thomas R. Garlington* and *Randolph W. Urmston, Assistants*, for respondents.

FARRIS, J.—Leo J. Peden commenced an action to enjoin the City of Seattle and the Washington State Highway Commission from restricting the use of the Columbia and Cherry Street entrance and exit to the express lanes of

Interstate 5 to the general public. He appeals from an order granting summary judgment to the defendants.

In 1967 the legislature enacted RCW 47.52.090 which provided for formal agreements between highway authorities and municipal corporations operating public transportation systems to carry out the purposes of the act. The statute allows such an agreement to provide for the exclusive use of a portion of a limited access facility by vehicles which are a part of an urban public transportation system.

Relying on this statute, the City of Seattle and the Highway Commission entered into an agreement which included a provision for the exclusive use of the Columbia and Cherry Street ramp for the "Blue Streak" bus system. "Blue Streak" is a demonstration project by the Seattle Transit System in cooperation with the State Department of Highways, the City of Seattle Engineering Department and the United States Department of Transportation, including the Federal Highway Administration and the Urban Mass Transportation Administration. The project consists of special busses using a defined section of roadway between two defined points.

Peden contends that highways are dedicated to the public use and that governmental agencies lack authority to exclude him and other members of the general public from the Columbia and Cherry Street entrance and exit to the express lanes of Interstate 5. He relies upon certain language in RCW 47.52.090 to support his position. He also argues that 23 U.S.C.A. § 142(e) requires the mass transportation system to have the capability of fully utilizing the proposed project before such a system can be constructed and that article 1, section 16 of the Washington State Constitution and the 18th amendment to the Washington State Constitution are violated by the action taken. While the pertinent provisions contain the language that he quotes, the factual pattern here precludes the application that he urges.

The legislature within applicable constitutional limitations may regulate traffic over the highways of this state.

The essential principle to be kept in mind is that the legislature, within constitutional limitations, has absolute control over the highways of the state, both rural and urban.

*State ex rel. York v. Board of County Comm'rs*, 28 Wn.2d 891, 898, 184 P.2d 577 (1947). It has properly delegated the operational control over limited access facilities to the highway authorities of the state. *See* RCW 47.52.020[1] and RCW 47.01.060.[2]

██ By instructing the highway authorities to coordinate the development of public highways and urban transportation systems, the legislature is exercising its legitimate police power. The broad scope of this power is defined in *Shea v. Olson*, 185 Wash. 143, 153, 53 P.2d 615, 111 A.L.R. 998 (1936).

However difficult it may be to give a precise or satisfactory definition of "police power," there is no doubt that the state, in the exercise of such power, may prescribe laws tending to promote the health, peace, morals, education, good order and welfare of the people. Police power is an attribute of sovereignty, an essential element of the power to govern, and a function that cannot be surrendered. It exists without express declaration, and the only limitation upon it is that it must reasonably tend to correct some evil or promote some interest of the state, and not violate any direct or positive mandate of the constitution.

The legislature has declared that separate and uncoordinated development of public highways and urban public transportation systems is wasteful of the state's natural and financial resources. Laws of 1967, ch. 108, § 2, codified as RCW 47.04.083. The "Blue Streak" project was conceived to meet this drain on resources. It can reasonably be concluded that the program is within the general public welfare and a proper exercise of police power.

We find that the "Blue Streak" project, an experimental

---

[1]Powers of highway authorities—State facility, county road crossings.

[2]Exercise of powers—Rules and regulations.

rapid bus system, is reasonably calculated to correct a discernible public problem. The slight inconvenience caused to Peden on account of this public program is of no constitutional consequence. The public right to use the highways is not absolute; it may be reasonably regulated pursuant to legitimate exercise of state police power.

Affirmed.

SWANSON, C.J., and JAMES, J., concur.

Petition for rehearing denied July 18, 1973.

Review denied by Supreme Court August 27, 1973.