HENDRY, Judge.
This interlocutory appeal by Dade County raises the question as to whether or not it was proper for the circuit court to appoint an ad hoc committee to study the county’s controversial “Blue Dash” traffic program[1] [hereinafter “Blue Dash”].
The court was confronted with the issues surrounding the “Blue Dash” when the appellees filed a complaint seeking declaratory and injunctive relief. The appel-lees alleged, inter alia, that the “Blue Dash” was hazardous to the public and that the county had failed to adequately inform the public or to provide adequate safeguards in implementing the program.
Thereafter, on July 16, 1974, the trial judge denied a motion for a temporary restraining order, determining that “in the absence of a showing that the traffic plan which the county intends to implement is, as alleged, unsafe, this court has no right to interfere with the clear grant of authority to the county to proceed with this plan under its police powers.”
Two weeks later, the court entered another order which is the subject of this appeal. In between the two orders, the trial judge had considered further testimony and had personally inspected and viewed the “Blue Dash” operation.
The court found that the “Blue Dash” had not yet resulted in an increase in accidents, injuries or discrimination against any persons affected by its operation.
Further, the court stated “that any preemptory order of this court halting this program, at this posture, would be a premature and unwarranted interference by the Court with established principles of separation of powers of the various branches of government.”
However, the court then went one step further and designated the city managers of .the cities of Miami, Coral Gables and South Miami together with the county manager of Dade County as an ad hoc committee to assist the court in scrutinizing (for a period of not less than thirty days) the “Blue Dash” and in gathering facts and statistics.
It is this last step which Dade County is appealing. The county contends the court has embarked upon an unwarranted intrusion into the legislative field after previously determining that the county acted properly within the ambit of its police powers in instituting the “Blue Dash.” We agree.
It was stated in State ex rel. Fohl v. Karel, Fla.1938, 131 Fla. 305, 180 So. 3, 6:
“The right to use the highways and streets for purposes of travel, however, is not an absolute and unqualified one, but may be limited and controlled by the state in the exercise of its police power, whenever necessary to provide for and promote the safety, peace, health, morals, and general welfare of the people, and is subject to such reasonable and impartial *694 regulations adopted pursuant to this power as are calculated to secure to the general public the largest practical benefit from the enjoyment of the easement, and to provide for their safety while using it. * * * It is the province of the legislature to decide upon the wisdom and expediency of such regulations and restraints, and the courts cannot declare them void, or interfere with their operation, unless they are so manifestly unjust and unreasonable as to destroy the lawful use of property, and hence are not within the proper exercise of the police power of the government * * * ” (See also, Peden v. City of Seattle, 9 Wash.App. 106, 510 P.2d 1169 (1973).
Therefore, it is our determination that any further scrutiny of the “Blue Dash” program should be undertaken by the proper county authorities and not under the supervision of the court.
For the reasons stated, the order appealed is modified to eliminate therefrom the appointment of an ad hoc committee.
Affirmed as modified.

. The program, involves the use of a contraflow bus lane between Sunset Drive and Interstate 95, along the South Dixie Highway as well as a priority carpool lane.. The express buses run during the peak traffic hours, from 6 to 9 A.M. and from 4 to 7 P.M.