THOMAS, Justice.
The petitioners seek a review of an order of the respondents cancelling “Certificate of Public Convenience and Necessity” No. 460, held by L. H. Sims, and ordering it reissued to Rockana Carriers, Inc. By the order the commission authorized the carriage by the transferee of fertilizer and fertilizer materials anywhere in Florida.
As we shall see when we reach its origin and history, the certificate, numbered 460, now involved had been issued to L. H. Sims in 1953 authorizing him to transport fertilizer and fertilizer materials. Rockana Carriers, Inc., possessed no authority from the Florida Railroad and Public Utilities Commission to engage in automobile trans portation of any kind.
*248 L. H. Sims and Rockana Carriers, Inc., jointly petitioned the respondents for approval of the transfer of the certificate from the former to the latter and the petitioners protested primarily on the ground that the certificate was void and because of that status a transfer of it could not be justified. Further to support their position that the transfer should not be allowed, the petitioners undertook to introduce evidence that the transfer would be against the public interest and would, in effect, initiate a new service. Moreover, they attempted to present evidence that would aid the respondents in determining whether or not the certificate should be altered and to show that the holder had forfeited the certificate by his failure to operate under it for a period of ninety days. This evidence was rejected on the theory that the question of propriety of the certificate had been resolved at a hearing in 1947 when the respondents granted the application of L. H. Sims, then an assignee of a “For Hire” permit, for an extension of a “ ‘Limited Common Carrier Certificate,’ ” and that the matter of non-use was one to be presented by a different and separate procedure, Secs. 323.09 and 323.10, Florida Statutes 1953, and F.S.A., therefore, that all proffered testimony was irrelevant. The present petitioners insist that the testimony should have been received because under the law, Sec. 323.03(5), Florida Statutes 1953, and F.S.A., regulating assignment and transfer of certificates of public convenience and necessity, applications for transfer are “subject to” the same provisions as to public hearing and notice as original applications.
The petitioners first direct their argument to the charge that the certificate of L. H. Sims was void from the beginning, and state that this voidness resulted from the lack of authority for certificate number 460 in the first place “to the extent to which [the petitioners] are interested here * •*.” We have furnished the italics.
We will now condense the history of the ‘certificate’ which the petitioners insist demonstrates its voidness. In 1936, a permit for hire, No. 304, was issued under Sec. 5, Chapter 14764, Laws of Florida, Acts of 1931, to E. E. Robinson “as a matter of right and of course” and “without notice or public hearing” to authorize the hauling of household goods upon the finding in the commission’s order that Robinson was-“performing a ‘For Hire’ service as defined by law * *
To continue, in 1943 Robinson and Sims-jointly petitioned the Railroad & Public. Utilities Commission to approve the transfer of this ‘limited certificate’ to Sims.. Notice of hearing of this application carried the description of the certificate as-“Limited Common Carrier Certificate No. 304” but did not indicate that the certificate-was actually “For Hire” permit No. 304. The commission entered an order approving the transfer of “Limited Common Carrier Certificate No. 304” and authorized the-continued transportation by the transferee of household goods under this certificate. In 1947 Sims applied for an extension of “Limited Common Carrier Certificate No. 304” to allow the carriage of fertilizer and fertilizer materials throughout the state and' his application was granted in the following language: “Limited Common Carrier Certificate of Public Convenience and Necessity No. 304 * * * is * * * ex_ tended so as to authorize the Applicant * * * to transport fertilizer and fertilizer materials * * *.” So by this time, according to petitioners, a lowly “For Hire”" permit had become a “Limited Common Carrier Certificate of Public Convenience and Necessity” under which the holder could transport fertilizer and fertilizer materials as well as household goods.
Then, in October 1953, the commission-split the certificate, so to speak, by approving the assignment of a portion of it to-F. D. Bloodworth, doing business as Orlando Transfer and Storage Company, so that company could carry household goods,, and by entering an order cancelling old’ certificate, or permit, No. 304 and issuing-in its stead Certificate of Public Convenience and Necessity No. 461 to Bloodworth,, and Certificate of Public Convenience and. *249 Necessity No. 460 to Sims authorizing transportation by him of fertilizer and fertilizer materials.
The petitioners say in their brief that they are not concerned with the authority granted Bloodworth, but only with the transfer of the ‘certificate’ from Sims to Rockana Carriers, Inc., so we will confine further comment to the permit originally issued, and the certificate purportedly issued to Sims, and the effectiveness of that authority as a basis for a transfer of a Certificate of Public Convenience and Necessity to Rockana Carriers, Inc.
At the time the “For Hire” Permit No. 304 was issued to Robinson the term “For Hire” by the provisions of Sec. 1(j) of Chapter 14764, Laws of Florida, Acts of 1931, was defined as including “all motor driven vehicles * * * in use for transporting persons, commodities or materials for compensation, or such motor vehicles as may be let or rented to another for a consideration” excepting vehicles used to transport farm products and to carry school children, Sec. 1280, Compiled General Laws 1927. By the time Sims became the holder of the permit by transfer from Robinson, the Florida Auto Transportation Act, Chapter 323, Florida Statutes 1941, and F.S.A., had been enacted. It relates primarily to three kinds of carriers — common carriers, contract carriers and carriers for hire. Riley v. Lawson, 106 Fla. 521, 143 So. 619. In the act the word “permit” was defined as a “permissive permit issued * * * to * * * carriers operating over public highways with ‘for hire’ tags” while carrying persons or property for a price “other than those holding certificates of public convenience and necessity * * (Italics supplied.) Sec. 323.01(4), Florida Statutes 1941, and F.S.A. The words italicized show very definitely that the legislature placed permits and certificates in separate categories. The definition of “permit” appearing in Sec. 1(e) of Chapter 14764, supra, is substantially the same, and the part we have italicized appears there verbatim.
There seems to be a difference between the dignity of a permit and a certificate of convenience and necessity, and in the procedure by which each is obtained. Under Chapter 323, supra, which became effective in 1941, a carrier of persons and property could not operate on the highway without the permit, which would, however, be granted as a matter of right if the laws of the state regulating such vehicles had been obeyed. Except for this condition the permit was allowed “as of course and without notice or public hearings * * Sec. 323.05(2), Florida Statutes 1941, and F.S.A. This was also the case under the prior law, Sec. 5 of Chapter 14764, supra. On the other hand, a certificate of public convenience and necessity covering transportation by common carriers could be obtained pursuant to Chapter 323, supra, only after hearing by the commission at a given time subsequent to a prescribed notice. Other carriers serving any part of the route in question, mayors, or chief magistrates of towns, and chairmen of boards of county commissioners of counties, through which the applicant proposed to operate, and the chairman of the state road department, were required to be notified. Sec. 323.03 (2), Florida Statutes 1941, and F.S.A.
Such certificates, of convenience and necessity, could be assigned with the consent of the commission, but applications for transfers were required to be filed jointly by assignor and assignee and were subject to the same provisions as to formal notice and hearing as regulated original applications. Sec. 323.03(5), supra. The requirements with reference to original applications and applications for transfers were also present in Sec. 3, Chapter 14764, supra.
In our study of the statutes and the briefs, we have not discovered, nor have we been directed to, any provision of law for the transfer of a “For Hire” permit.
So it is plain that permits and certificates are in distinct classes; that the latter are granted and transferred with great formality; that the former are granted with little formality or none; that while certificates are transferable with considerable *250 formality, permits are apparently not transferable at all.
In refutation of petitioners’ argument the respondents insist, in effect, that the formality of the hearing in 1947, cured any infirmities in the ‘certificate’ that Sims was attempting to assign to Rockana Carriers, Inc. They say in their brief that at that time Sims was seeking “common carrier certificate authority to transport fertilizer and fertilizer materials through application for extension of his * * * Certificate No. 304” and that he “could have as easily filed application for. a separate certificate but since he already' held a certificate, he simply applied for an extension of such certificate.” But no matter how often the title “certificate” is given the instrument Sims held, the fact remains that it was a “permit,” No. 304, when issued in 1936, it was a “permit” when in 1943, the holder and prospective transferee chose to call it a “Limited Common Carrier Certificate No. 304” in their petition for approval of a transfer, it was a permit when the respondents in their order approving the transfer gave it the title the petitioners, Sims and Robinson, had selected.
We do not agree that the status of the authority of the initial holder could be transformed in the circumstances we have related. As we have already stated we have found no authority for transfer of a permit, and the change of name by the holder and the prospective assignee, and the adoption of that name by the respondents did not alter the nature of the permit.
We recognize the presumption that orders entered by the commission are within the scope of their power, Sec. 350.12 (m), Florida Statutes 1941, and F.S.A., but we think the presumption cannot stand against the situation shown by the record in this case. And the presumption that the order presently under review was valid is further undermined so far as the rejection of the testimony we have mentioned is concerned. Even were we to assume that the authority sought to be transferred to Rock-ana Carriers Inc., was evidenced by a valid certificate of convenience and necessity, the rejection of the testimony could not be approved because it was relevant in a hearing ro transfer which must be “subject to the same provisions as to public hearing and notice as original applications * * Sec. 323.03(5).
The protestants tried to introduce testimony that no need existed for authorizing the transferee, Rockana Carriers, Inc., to perform the service. They undertook to show what service had been furnished by Sims and what was likely to be rendered by Rockana Carriers, Inc., and as we stated at the outset they attempted to establish the abandonment by Sims of his permit by reason of failure to operate. They also offered testimony that Sims had failed to file periodic reports of his operation.
The commission is charged with “preserving and protecting public convenience and necessity, fostering fair distribution of traffic and promoting the welfare of the public and those serving the public under the commission’s supervision.” In the case from which this quotation comes we commended them for performing this duty. Jack’s Cookie Co. v. Florida Railroad & Public Utilities Commission, Fla., 54 So.2d 695. The merits of the applications presented to the commission, whether for new certificates or transfers of old ones, are judged by the purpose we have recognized in the cited case and other decisions.
It is true that special procedure is outlined in the act for cancellation of certificates which by inaction of the holder have been abandoned but it does not follow that testimony about the holder’s inaction is irrelevant in any other proceeding such as the one, under review, for transfer. Such information would be valuable to determine the need of the service which, as we shall presently point out, is the ever present problem to be solved by the commission. The fact that the procedure for obtaining a transfer is the same as that regulating the determination of an application for a new certificate demonstrates that the question is continual. The testimony about the quality of the service being furnished by the proposed transferrer, about his failure to per *251 form any service, and about the service to be furnished by the prospective transferee cannot, therefore, be said to have no bearing on the decision whether or not the transfer should be approved. Information in respect of the quality and quantity of service rendered by the transferrer could have been gained from his annual reports and it was error not to permit the protestants to show that they had not been submitted.
Evidently it is the respondents’ view that once a certificate is issued the need for the service is determined for all time, and upon application for transfer it would be inappropriate to go into the matter of public necessity, or to require the proposed transferee to show public necessity, unless there had been a revocation.
The respondents say in their brief that since the decision of this court in University City Transfer Company v. Florida Railroad Commission, 124 Fla. 308, 168 So. 413, they have “consistently * * * declined to cancel a certificate for non-operation, where protestants have waited to register their complaint until the filing of a petition for transfer of the certificate.” We do not find that the decision was authority for the ruling in the instant case. True, it was held in that opinion that inasmuch as the certificate in question had not been revoked, the transferee did not have to show public convenience and necessity as would have been his burden had he been presenting an original application. But it was not meant by the announcement that relief of applicants from the burden would render any evidence on the subject inadmissible. On the contrary such evidence was admitted and was considered by the commission.
It cannot be said that when a certificate is issued, the matter of public necessity is settled, once for all, and that a transfer merely involves a change of holders’ names. That would make a gesture of the formal hearing required by the statute. And, in order to carry out the very purpose of the statute, information with reference to the character of the service, new and old, the effect upon the area to be served and upon the interests of the public and other carriers, is important. Without this intelligence, it would be difficult, if not impossible for the commission to follow the provisions of the statute that if may “reasonably alter, restrict or modify the terms and provisions of any such certificate, or impose restrictions on such transfer where the public interest may be best served thereby, or transportation facilities within the territory or on the route involved may be safeguarded or improved in the interest of the public.” We have quoted from Sec. 323.-03(5), supra, which governs petitions for transfer of certificates of public convenience and necessity.
Because we conclude that the passage of time and the failure of interim complaint could not supply the power in the commission to recognize and deal with a permit so that it would eventually become a certificate and entitled to the efficacy of one, and because we have the view that even had this obstacle been absent, the ruling on the admissibility of the evidence was erroneous, the petition for certiorari is granted and the challenged order is quashed.
TERRELL, HOBSON and O’CON-NELL, JJ., concur.
DREW, C. J., concurs in judgment.
ROBERTS and THORNAL, JJ., not participating.